EL PUEBLO, DEMANDANTE Y APELADO, *v.* ROLDÁN ET AL., ACUSADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de Humacao en causa por asesinato en segundo grado.

No. 1389.—Resuelto en julio 31, 1919.

EVIDENCIA—PRUEBA PERICIAL.—Generalmente el examen de un perito debe limitarse a las apariencias y opiniones y no deberá exigírsele que hable sobre hechos, pues el jurado puede ser inducido a error por sus conclusiones expuestas como hechos.

Ib.—INSTRUCCIONES AL JURADO SOBRE DELITO DE GRADO INFERIOR — PREMEDITACIÓN—ASESINATO—HOMICIDIO.—Cuando existe prueba por virtud de la cual el acto de dar muerte a una persona puede quedar reducido a un delito de grado inferior al de asesinato, comete error la corte al negarse a dar instrucciones al jurado respecto al delito de homicidio y este error resulta aun más perjudicial para el acusado cuando la corte también comete error al definir el delito de asesinato en segundo grado en el sentido de que excluye el elemento de la premeditación que es común a todos los asesinatos.

DERECHO DEL ACUSADO A NO DECLARAR—INSTRUCCIONES AL JURADO.—Las observaciones improcedentes hechas por el fiscal al jurado, tales como criticar la actitud asumida por el acusado absteniéndose de declarar, no pueden ser subsanadas por las instrucciones de la corte.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Arturo Aponte* y *Huyke & López del Valle.*

Abogado de El Pueblo: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

La acusación en este caso imputaba un delito de asesinato en primer grado. Los hechos alegados en ella fueron sustancialmente que los acusados, al perpetrar un delito de robo, sustrayendo violentamente una cantidad de dinero de la persona de Guillermo Torres, conocido por "El Inglés," produjeron por medio de tortura la muerte de dicho Guillermo Torres, arrojándole después de haberle agredido a un tanque de la represa del acueducto de Juncos y con el propósito decidido y firme de causar la muerte, impidieron que el mencionado individuo pudiera salvar su vida, lanzándole piedras cada vez que hacía esfuerzos para salir del tanque, donde murió a consecuencia de asfixia por inmersión.

Se ha admitido que no hubo prueba de la alegada tortura ni tampoco de lanzar piedras o impedir que dicho Torres saliera del tanque. Se probó que Guillermo Torres falleció de asfixia por inmersión, y hubo prueba tendente a mostrar que los apelantes lo lanzaron en el tanque. Uno de los principales elementos del delito de asesinato es la deliberación o premeditación. La deliberación y premeditación en esta acusación parecen estar unidas a la supuesta tortura. En su informe al jurado el fiscal le dijo que esperaba probar que los acusados impidieron a Torres salir del tanque. Además, en el juicio, aunque hubo alguna prueba circunstancial, solamente dos testigos prestaron declaración acerca del supuesto robo. Uno de ellos había sido declarado culpable de perjurio y condenado a cinco días de cárcel. El otro no presenció el robo pero declaró que había oído decir a Torres

"no me maten, yo les devolveré el dinero." Como toda la prueba muestra que los dos apelantes y Torres habían estado jugando a lo prohibido y que hubo cierta disputa entre Torres y los otros dos sobre una parada, la prueba del motivo del robo que dió por resultado el supuesto homicidio parece algo deficiente. La acusación se hizo contra tres acusados, de los cuales el jurado declaró culpable al tercero, Gaspar Rivera, como cómplice, el que fué luego absuelto por la corte. Inmediatamente antes del supuesto homicidio y cerca de la casa de dicho Gaspar Rivera, según la prueba, ladró un perro y Torres disparó un tiro al aire o al perro. Después de exclamar que no había camino Rivera pegó a Torres. Entonces los dos apelantes se lanzaron sobre Torres, como también Rivera. De acuerdo con el principal testigo el robo tuvo entonces lugar y posteriormente los tres acusados lanzaron a Torres muerto o casi muerto al tanque. No hubo prueba de que Gaspar Rivera tomara parte en el robo y, según entendemos, este hecho ha sido admitido por el gobierno. Quedó claramente probado que la muerte fué producida por asfixia por inmersión.

A un experto médico que declaraba se le preguntó si las contusiones fueron producidas por golpes leves o fuertes y si éstas fueron ocasionadas antes o después de la muerte. El examen de un perito en general debe limitarse a las apariencias y opiniones y no debe exigírsele que exponga hechos. *El Pueblo* v. *Rivera,* 25 D. P. R. 812.

Aunque, tal vez, exista algún conflicto en las autoridades con respecto a las cuestiones particulares envueltas, la forma de las preguntas era mala y el haberlas permitido constituyó error. El error se hizo mayor por el hecho de que el perito era el alcalde de Juncos en la fecha del homicidio y había prestado declaración de hechos que conocía de modo que el jurado pudo fácilmente haber sido inducido a error por sus conclusiones expuestas como hechos.

Hubo prueba tendente a demostrar que después que Torres disparó al aire o al perro surgió un conflicto en el cual

tomaron parte los apelantes.    Ahora bien, aunque los apelantes pueden haber aprovechado esta ocasión deliberadamente y con premeditación para robar y matar a Torres y si bien la prueba de una contienda habida entre ellos puede que no haya sido convincente; sin embargo tal prueba no fué suministrada solamente por los testigos del gobierno, pero aun si hubiera sido aportada como defensa hubiese levantado la cuestión de si el homicidio no llegaba a constituir asesinato.    La corte, a pesar de la solicitud de los acusados, se negó a dar instrucciones respecto al delito de homicidio.    Esto constituyó error.    En el caso de *El Pueblo* v. *Alméstico,* 18 D. P. R. 320, no hubo prueba que redujera el acto de causar la muerte de un delito de asesinato a uno de homicidio.

Este error resultó más perjudicial para los apelantes a causa de otro, a saber, la instrucción dada en cuanto al delito de asesinato en segundo grado, del cual fueron declaradas culpables los apelantes.    Se ha admitido que este grado de asesinato fué definido de modo que excluía el elemento de premeditación que es común a todos los asesinatos.    El apelante, con mucha razón, sostiene que definido de tal modo el jurado podría pensar que ellos hacían una declaración de culpabilidad por un delito de homicidio.    Sostiene el gobierno que las instrucciones deben considerarse en conjunto, pero no encontramos nada en ellas que subsanara la manifestación terminante hecha por la corte, de que el asesinato en segundo grado existía cuando no había deliberación ni premeditación.

El cuarto error alegado sobresale muy claramente.    El fiscal en su informe al jurado, dijo lo siguiente:

"Los acusados tienen el derecho de declarar o no en virtud de un precepto legal y también están amparados por la presunción de inocencia.    Sin embargo, esto no quita que hayan tenido la oportunidad de sentarse a declarar en la silla testifical y su testimonio hubiera sido como el de cualquier otro testigo.    Ellos no han declarado, han permanecido en silencio aun cuando no están en la obligación de declarar.    Pero aquí se han hecho graves acusaciones sostenidas por una prueba abrumadora, que los acusados no han desvirtuado."

Casi hay un solo criterio entre las autoridades de que las observaciones como éstas no solamente son erróneas sino que no pueden ser subsanadas por las instrucciones y que debe ordenarse un nuevo juicio por la corte. *People* v *Morris*, 84 Pac. 464–65 y casos citados; *Wilson* v. *United States*, 149 U. S. 60; *People* v. *Brown*, 53 Cal., 66; *Barnard* v. *State*, 122 A. S. R. 736, 2 R. C. L. 428.

Este fué un caso en que los hechos ocurrieron todos en el mes de febrero de 1914. Por falta de prueba contra éstos y otros acusados se expidió un auto de *habeas corpus* en febrero 21 de 1914, y los prisioneros fueron puestos en libertad.

Nada se hizo entonces por espacio de tres años y según parece los dos testigos principales, de los cuales por lo menos uno había hecho un relato distinto antes, informaron a la policía. La acusación en este caso fué presentada el día 4 de mayo de 1917 y los apelantes, según parece, han estado encarcelados desde esa fecha. Los apelantes llaman la atención hacia el hecho de haber prescrito el término para un proceso por homicidio. En el estado en que se encuentra la acusación y la prueba y el lapso de tiempo transcurrido, tenemos cierta duda de si debe continuarse el proceso en el caso, pero preferimos dejar la resolución de esta cuestión a la discreción de los funcionarios de la corte inferior.

La sentencia debe ser revocada y el caso devuelto para ulteriores procedimientos que no sean incompatibles con esta opinión.

> *Revocada la sentencia apelada, y devuelto el caso a la corte inferior para ulteriores procedimientos no incompatibles con la opinión.*

Jueces concurrentes: Sres. Asociados del Toro, Aldrey y Hutchison.

El Juez Presidente Sr. Hernández no tomó parte en la resolución de este caso.