SEBASTIÁN BONET Y BERGA, demandante y apelado, *v.* SUCN. DE HORTENSIA HERNÁIZ ROZAS, compuesta de sus hermanos CÁNDIDO y MANUEL HERNÁIZ ROZAS, como herederos conocidos y demás herederos desconocidos que se designan como JOHN DOE y RICHARD ROE, y BANCO COMERCIAL DE PUERTO RICO, demandados; y MANUEL HERNÁIZ ROZAS, demandado y apelante.

No. 6736.—*Sometido:* Mayo 22, 1935. *Resuelto:* Noviembre 22, 1935.

*Largé, Acevedo y Lecároz, abogados del apelante; Salvador Suau,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Sebastián Bonet inició este pleito ante la Corte de Distrito de San Juan contra la Sucesión de Hortensia Hernáiz compuesta de sus hermanos Cándido y Manuel, como sus herederos conocidos, y John Doe y Richard Roe, como sus herederos desconocidos, y contra el Banco Comercial de Puerto Rico, en cobro de un crédito hipotecario, alegando substancialmente lo que sigue:

En enero 5, 1923, Hortensia Hernáiz, soltera, vecina de Carranza, provincia de Vizcaya, España, por medio de su apoderado Cándido Hernáiz, constituyó hipoteca sobre la casa de su propiedad No. 54 de la calle de San Justo de esta

ciudad de San Juan, a favor de Sebastián Bonet y en garantía de la suma de treinta mil dólares que se comprometió a devolverle en el plazo de cuatro años, con intereses al ocho y medio por ciento anual pagaderos al vencimiento de cada mes. El contrato se hizo constar en escritura pública de igual fecha que se inscribió en el Registro de la Propiedad del Distrito.

El 21 de marzo de 1929 las mismas partes contratantes celebraron un contrato de anticresis que hicieron constar en escritura pública de igual fecha, por virtud del cual la deudora Hernáiz cedió al acreedor Bonet los arrendamientos de la casa hipotecada para aplicar su producto al pago de los intereses de la deuda, al de los de una segunda hipoteca constituída a favor del Banco Comercial y al de las contribuciones atrasadas y corrientes, estipulándose además que los términos del contrato de anticresis en nada afectarían, modificarían o variarían las obligaciones derivadas del contrato de hipoteca.

Entró en efecto el acreedor Bonet en posesión de la casa y ha venido percibiendo sus alquileres aplicando su importe en primer término al pago de los intereses atrasados de sus dos gravámenes y luego al de las contribuciones atrasadas y corrientes, rindiendo liquidaciones periódicas a la deudora Hernáiz y después de su muerte ocurrida en enero 31, 1932, al demandado Cándido Hernáiz.

El plazo para el pago de la deuda garantizada con la hipoteca venció desde el 5 de enero de 1927 sin que la deuda fuera satisfecha por los demandados ni por alguno de ellos en todo o en parte. Los intereses fueron satisfechos hasta Abril 4, 1930. Se deben a partir de esa fecha, ascendiendo al 31 de diciembre de 1932 a $6,991.16, siendo, por tanto, la cantidad líquida debida la de $36,991.16.

Se incluye al Banco Comercial como parte demandada por haberse constituído por la Sra. Hernáiz a su favor una hipoteca sobre la indicada casa en garantía de $3,500.

Se pidió sentencia condenando a la Sucesión demandada a pagar al demandante la suma reclamada, las costas previamente fijadas en mil dólares, y los intereses hasta la fecha del pago, y si no lo hiciere que se venda en pública subasta la finca hipotecada para satisfacer la sentencia, quedando la segunda hipoteca cancelada.

Emplazados los demandados, sólo compareció Manuel Hernáiz. Presentó primero una moción para eliminar que fué desestimada. Luego pidió un pliego de particulares. Se opuso el demandante. La corte declaró con lugar la petición. Contestó entonces aceptando algunos hechos de la demanda y negando otros, alegando substancialmente que el contrato de anticresis modificó y varió el de hipoteca, novándolo, y que el demandante ha venido y está actualmente en posesión de la casa a virtud del contrato de anticresis que se encuentra en vigor, motivo por el cual la deuda reclamada no es líquida ni exigible. Como defensa especial alegó que la demanda no aducía hechos suficientes para determinar una causa de acción.

Fué el pleito a juicio y la corte lo decidió finalmente por sentencia favorable al demandante el 26 de febrero de 1934. En su relación del caso y opinión se expresó en parte como sigue:

"De acuerdo con el testimonio del demandante y de varias cartas y elaborados estados de cuenta presentados y admitidos en evidencia, la deudora hipotecaria ni ninguno de los demandados ha satisfecho a dicho acreedor en todo ni en parte el montante del préstamo de $30,000, ni de sus intereses reclamados. Y aparece así mismo del extenso examen del referido testigo y de las hojas de contabilidad admitidas en evidencia sobre tales extremos, prueba que no fué en forma alguna controvertida, que el demandante cumplió debidamente con los términos y convenios del contrato de anticresis, dando a los ingresos por concepto de alquileres la aplicación convenida por las partes. Por dicha prueba, que a la Corte merece entero crédito, el tribunal llega a la conclusión de que las rentas producidas bajo el contrato de anticresis fueron enteramente absorbidas por los usos y aplicaciones a que fueron destinadas por las partes, tales como in-

tereses hipotecarios del demandante y del Banco Comercial de Puerto Rico, contribuciones atrasadas y corrientes, reparaciones y agua y luz eléctrica utilizadas en la finca gravada. En tal virtud, el crédito hipotecario del demandante con sus intereses reclamados se halla en su totalidad vencido y es exigible.''

No conforme el demandado Manuel Hernáiz, apeló para ante este tribunal. Señala en su alegato cuatro errores cometidos a su juicio por la corte de distrito al dictar sentencia, 1°, declarando con lugar una demanda que no aduce hechos suficientes para determinar la causa de acción ejercitada; 2°, resolviendo que el contrato de hipoteca no fué novado por el de anticresis; 3°, dando paso a la acción hipotecaria sin haberse rescindido el contrato de anticresis; y 4°, reconociendo el cumplimiento por parte del demandante de lo convenido a virtud de dicho contrato. Todos pueden estudiarse conjuntamente. Argumentándolos, dice el apelante, en parte en su alegato:

En cuanto al primero, ''no se alega en la demanda que dicho contrato (el de anticresis) se haya rescindido de ningún modo, ni que se haya reintegrado de nuevo a Hortensia Hernáiz Rozas o sus herederos en el goce de la finca, como dispone el párrafo segundo del artículo 1784 del Código Civil de Puerto Rico, ed. 1911, para poderse librar el acreedor de las obligaciones que se impuso por el contrato, y que además le impone el artículo 1783 del citado Código Civil.''

En cuanto al segundo, ''es indiscutible que la estipulación contenida en el contrato de anticresis de que la hipoteca de Bonet se pagaría y cobraría dicho señor con el producto de los arrendamientos y alquileres de la finca, durante la vigencia de los dos gravámenes hipotecarios relacionados en la escritura de anticresis, o sea hasta la extinción de la hipoteca de Bonet y la del Banco Comercial de Puerto Rico, implica una modificación sustancial de la forma, modo y plazo de hacer efectiva la hipoteca que se ejecuta, modificación que determina la novación de la condición de pago de la hipoteca de Bonet. . .''

En cuanto al tercero, "exista o no la novación alegada por este demandado como defensa al contestar la demanda, y aun suponiendo que no exista la novación, en tal supuesto quedaría la controversia gobernada por la teoría de la anticresis. Y vamos a demostrar ahora, que de acuerdo con esta institución jurídica es necesario entregar al deudor la finca dada en anticresis antes de que el acreedor pueda ejecutarla.

"Los artículos 1782, 1783 y 1784 del Código Civil establecen lo siguiente:

" 'Art. 1782 C. C. R.: Por la anticresis el acreedor adquiere el derecho de percibir los frutos de un inmueble de su deudor, con la obligación de aplicarlos al pago de los intereses, si se debieren, y después al del capital de su crédito.

" 'Art. 1783 C.C.R.: El acreedor, salvo pacto en contrario, está obligado a pagar las contribuciones y cargas que pesen sobre la finca.

" 'Lo está asimismo a hacer los gastos necesarios para su conservación y reparación.

" 'Se deducirán de los frutos las cantidades que emplee en uno y otro objeto.

" 'Art. 1784 C. C. R.: El deudor no puede readquirir el goce del inmueble sin haber pagado antes enteramente a su acreedor.

" 'Pero éste, para librarse de las obligaciones que le impone el artículo anterior, puede siempre obligar al deudor a que entre de nuevo en el goce de la finca, salvo pacto en contrario.'

"Por virtud del primero de estos preceptos el acreedor señor Bonet entró en la posesión y disfrute de la finca hipotecada que tomó en anticresis a los efectos prevenidos en el contrato, que coinciden con los determinados en los artículos 1782 y 1783 del citado Código Civil de Puerto Rico.

"Siendo esto así, claro es que el demandante no tiene acción para pedir en este caso (*sine actione agis*) porque se lo impide la propia naturaleza del contrato de anticresis en funciones.

"Si por el contrato anticrético y en cumplimiento del mismo está obligado el señor Bonet a satisfacer su hipoteca, que se está él cobrando con el producto de los alquileres de la casa dada en anticresis, y está también obligado a pagar la hipoteca del Banco Comercial de Puerto Rico; y si, además, la ley le obliga (art. 1783 C.C.R.) a pagar todas las cargas de la finca, contribuciones y demás atenciones de la misma, ¿cómo va a poder ejercitar la acción

establecida que declaró con lugar el tribunal *a quo,* sin antes rescindirse el contrato anticrético, que está pendiente de cumplimiento, y devolver la finca al deudor, según previene el párrafo segundo del artículo 1784 del citado Código Civil de Puerto Rico?

"La sentencia apelada pugna con la realidad jurídica presente creada por el contrato de anticresis."

Y en cuanto al cuarto, "si, pues, para cumplir el contrato anticrético está poseyendo Bonet el inmueble y percibiendo sus frutos. Y si de la demanda aparece que no se ha pagado la deuda hipotecaria, ¿no está claro que el contrato no se ha cumplido y, por tanto, que el tribunal *a quo,* al declarar que sí, infringe los citados preceptos del Código Civil?"

Reconocemos la habilidad con que el apelante ha presentado su caso. No ha sido tarea fácil su estudio y decisión para nosotros. Sólo a virtud de un examen detenido de los hechos y la ley es que hemos podido llegar finalmente a la conclusión de que no existen los errores señalados, debiendo en su consecuencia declararse el recurso sin lugar y confirmarse la sentencia apelada.

A nuestro juicio la obligación garantizada por la hipoteca no fué novada.

En el propio contrato de anticresis las partes estipularon:

"SÉPTIMO: Los términos de este contrato son completamente independientes de los derechos y obligaciones que surgen entre deudor y acreedor hipotecario, y por tanto en nada modifica, sustituye o varía las obligaciones derivadas de dicho contrato de hipoteca."

Y en el artículo 1158 del Código Civil ed. 1930, se estatuye:

"Para que una obligación quede extinguida por otra que la substituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto incompatibles."

La hipoteca subsistió. Lo que se hizo por el nuevo contrato fué dar al acreedor una nueva manera de hacer efectivo el cobro de su crédito, una garantía más, y esta corte

ha dicho en el caso de *Iglesias* v. *Jefferson Standard Life Ins. Co.*, 45 D.P.R. 711, 714:

"Aparece, pues, que la demandada convino con los demandantes en desistir del primer procedimiento ejecutivo a cambio de una garantía adicional, cuya naturaleza no surge claramente de las alegaciones, pudiendo ser una anticresis o una cesión de rentas. Se alega que esto constituye una alteración de la forma de pago, pero, a decir verdad, la única alteración que aparece de los hechos alegados consiste en que a la demandada se le aseguraba el cobro de ciertos fondos específicos, o sea, las rentas, en vez de tener que depender únicamente de los fondos generales de que pudieran disponer los demandantes. Y esta llamada alteración en la forma de pago no es otra cosa, según se desprende de la demanda, que la concesión de una garantía adicional a la demandada. Es elemental que la concesión de una garantía no constituye por sí sola una novación de la prestación garantizada."

Pero se insiste en que aunque la hipoteca no fuera novada, es lo cierto que a virtud de la anticresis el acreedor está y continúa en la posesión del inmueble hipotecado percibiendo sus rentas, y no puede cobrar por la vía judicial su crédito hasta que devuelva dicho inmueble a su dueño el deudor.

Conocemos ya lo que disponen los artículos 1782, 1783 y 1784 del Código Civil—1781, 1782 y 1783 de su edición de 1930—y sabemos que el tercero de ellos prescribe que cuando el acreedor quiera librarse de las obligaciones que le impone el segundo o sea el pago de las contribuciones y otras cargas del inmueble, "puede siempre obligar al deudor a que entre de nuevo en el goce de la finca, salvo pacto en contrario", y que aquí el acreedor no ejercitó ese derecho.

Pero las citadas por el apelante no son todas las disposiciones del Código Civil con respecto a la anticresis. Existe además la del artículo 1784 de su edición de 1930, como sigue:

"El acreedor no adquiere la propiedad del inmueble por falta de pago de la deuda dentro del plazo convenido.

"Todo pacto en contrario será nulo. Pero el acreedor en este

caso podrá pedir, en la forma que previene la ley de enjuiciamiento civil, el pago de la deuda o la venta del inmueble.''

Comentando Manresa ese precepto, en parte dice:

''Pero si bien la disposición y el fundamento legal son los mismos en la prenda y en la anticresis, las consecuencias de la falta de pago son distintas, pues en la primera el acreedor puede proceder por sí a la venta de la cosa pignorada en la forma establecida por el art. 1872, con las amplitudes que han venido a dar a su sentido las resoluciones y sentencias que citamos en el comentario de dicho artículo, y, por el contrario, el acreedor anticresista, como el hipotecario, no se halla expresamente autorizado para proceder a la enajenación por sí, sino que, en todo caso, si no se hiciere efectiva la deuda a su vencimiento, no tiene otro derecho que el de pedir, en la forma que previene la ley de Enjuiciamiento civil, el pago de lo debido o la venta del inmueble dado en anticresis.'' 12, Manresa, Comentarios al Código Civil Español, 479, cuarta edición.

Y a él refiriéndose Sánchez Román, expresa:

''A diferencia de lo que sucede en el contrato de prenda, que si bien es preciso que precedan dos subastas, puede después de ellas el acreedor pignoraticio hacerse dueño de la prenda adjudicándosela en pago de la deuda, en la anticresis está esto terminantemente prohibido, siendo *nulo* todo pacto en contrario y 'quedando limitado el derecho de acreedor con anticresis, o a dimitir el disfrute de la finca por resultarle gravoso, según tenemos indicado, o a solicitar, en la forma que previene la ley de Enjuiciamiento civil, el pago de la deuda o la venta del inmueble (art. 1884).'' 4, Sánchez Román, Derecho Civil, 990, segunda edición.

Hemos examinado la escritura de anticresis acompañada a la demanda y no consta que se fijara un número determinado de meses o de años como término del contrato. Se dijo en ella que el acreedor percibiría el producto de la casa ''durante todo el tiempo de la vigencia de los gravámenes hipotecarios, o de la prórroga de los mismos en su caso, que sobre dicha urbana pesan'', supeditándose así el vencimiento de la anticresis al de la hipoteca, y como el vencimiento de la hipoteca y el no pago del crédito por la misma garantizado

se alegaron y probaron, surge claro el derecho del acreedor a cobrar lo que se le debe por la vía judicial.

¿Constituye una condición precedente al ejercicio de la acción de cobro de dinero la devolución del inmueble al deudor?

No lo ordena la ley. Los comentaristas que hemos consultado nada expresan sobre el particular. La cuestión, que sepamos, no ha sido resuelta por la jurisprudencia.

Ambos artículos, el 1783 y el 1784 del Código Civil, edición de 1930, tienen vida por sí mismos, ya que se refieren a situaciones distintas.

Cuando el acreedor quiere librarse de las obligaciones que le impone el contrato de anticresis que, según Manresa, "se otorga exclusivamente en favor del acreedor" (12, Manresa, Comentarios al Código Civil, 477, cuarta edición) puede obligar al deudor a que entre de nuevo en el goce de la finca, salvo pacto en contrario, de conformidad con lo dispuesto en el artículo 1783.

Ese no es aquí el caso. Aquí no se trata de si el acreedor continuó o no obligado a seguir aplicando las rentas al pago de las cargas, mientras estuviera en la posesión y administración del inmueble, rindiendo cuenta por supuesto de ello de acuerdo con la ley. Aquí se trata del cobro de la deuda original por no haberse satisfecho dentro del plazo convenido, situación prevista y regulada por el artículo 1784, y aunque nos damos cuenta de que el caso sería más sencillo si el inmueble se devolviera en el momento en que la acción judicial de cobro se inicia, no vemos que la devolución sea absolutamente necesaria. Lo que se necesita es que a la fecha en que la demanda se radique, el plazo convenido para el pago esté vencido y no se haya el pago verificado.

Es factible liquidar la deuda hasta determinada fecha y sobre esa liquidación actuar. Si la administración continúa por quedar el acreedor en la posesión del inmueble, vendrá dicho acreedor obligado a rendir otra cuenta que abarque el

nuevo período hasta que el asunto quede definitivamente terminado.

Esa es nuestra interpretación de la ley. La hipoteca no se ejecutó por la vía sumarísima. La deuda se cobró por la vía ordinaria que garantiza a la parte demandada amplia oportunidad para defenderse. El acreedor no se limitó a presentar en evidencia los documentos creditivos de la constitución de la obligación reclamada, si que partiendo de la base de la nueva situación de hecho creada por el segundo contrato—el de anticresis—presentó prueba del resultado de su administración. Y tomando en consideración el resultado de la prueba fué que se dictó la sentencia recurrida. La defensa del demandado único que compareció a oponerse a la reclamación fué técnica. No negó la existencia de la deuda. Se limitó a sostener en varias formas la improcedencia de la acción por no habérsele puesto en posesión del inmueble que hipotecó primero y dió en administración después para el pago de la deuda.

Demostrados la ineficacia de la administración para el fin que se creara y el vencimiento de la obligación y liquidada ésta, no podemos ver que se cometiera injusticia alguna al condenarse al deudor a pagar lo que realmente se demostró que debía y al ordenarse que si así no lo hiciere, se vendiera en pública subasta la finca que para garantizar el pago de su obligación él mismo previamente hipotecara, dedicándose el producto de la venta a satisfacer la sentencia. El derecho que tiene el deudor a exigir al acreedor que rinda cuenta de la administración del inmueble a partir de la liquidación que sirvió de base a la sentencia, por todo el término que continúe en la posesión del inmueble hasta que sea vendido, si lo fuere, es independiente y quedó en pie para ser ejercitado en la forma que proceda.

*Por virtud de todo lo expuesto, debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*