El Pueblo de Puerto Rico, demandante y apelado, v. Enrique Belardo, acusado y apelante.

Núm. 5824.—*Sometido:* Enero 21, 1936.  *Resuelto:* Julio 30, 1936.

* Nota:  Véase el prefacio.

*Faustino R. Aponte*, abogado del apelante; *R. A. Gómez, Fiscal* y *Luis Janer, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Enrique Belardo fué convicto del delito de asesinato en segundo grado por la Corte de Distrito de Humacao. En apelación para ante este Tribunal señala tres errores. Uno de ellos se basa en la conclusión de la corte de que hubo un verdadero conflicto entre la prueba ofrecida por El Pueblo y la presentada por la defensa. Otro se refiere a la exclusión de cierta evidencia por la corte, y el último versa sobre la insuficiencia de las instrucciones.

 Luego de examinar los autos y de leer las respectivas declaraciones de los testigos en pro y en contra del acusado, podemos decir que se presentan dos versiones distintas.

El caso del Pueblo es que el acusado el día de los disparos estaba escondido y acechó al occiso en un lugar cerca de la playa. Cuando el interfecto caminaba por el lugar en que el acusado se ocultaba, este último le disparó con su revólver hiriéndole fatalmente en la cabeza y produciéndole la muerte instantáneamente.

El caso del acusado por otra parte, es que el día de los disparos Enrique Belardo fué a pastar su caballo, y a su regreso fué inesperadamente atacado por el interfecto con una especie de sable. Belardo entonces retrocedió varios pasos hasta que se dió cuenta de que unos alambres ponían fin a su retirada, y entonces recordando que portaba un revólver y creyendo razonablemente que su vida peligraba, disparó y mató al occiso en defensa propia.

■ El primer señalamiento lee así:

"La Corte de Distrito de Humacao erró al no anular el veredicto del jurado y al denegar la concesión de un nuevo juicio, toda vez que el conflicto de la prueba aportada por el Pueblo y el acusado es más bien aparente que real, apareciendo de la misma que el homicidio en este caso es justificable."

El apelante está sencillamente equivocado. Dos testigos de cargo ofrecieron amplia evidencia que tendía a demostrar que el acusado era culpable. Lo que los letrados del apelante realmente hacen en su alegato es tratar de demostrar que los testigos del Pueblo se contradijeron en tal forma, por lo menos el testigo principal, que ninguna de la prueba de cargo debía ser creída. Es cierto que hallamos algunas inconsistencias pero no al extremo que podamos decir que el jurado no tenía derecho a creer, más allá de toda duda razonable, la evidencia que tendía a demostrar la culpabilidad del acusado.

■ El segundo error se refería a la negativa de la corte a permitir al acusado que atacara la credibilidad de cierto testigo del Pueblo mediante prueba de convicción anterior por el delito de perjurio en corte abierta, que es un "misdemeanor" según la ley en Puerto Rico.

El artículo 244 del Código de Enjuiciamiento Criminal (edición de 1935) dice:

"Podrá impugnarse la veracidad de un testigo por la parte en cuya contra haya sido llamado a declarar, bien mediante prueba contradictoria, bien demostrando que su reputación como persona veraz, honrada e íntegra, es mala; pero no por medio de prueba res-

pecto de hechos especiales y penables cometidos por él, a menos que resulte del examen del testigo, o del registro de la sentencia, que dicho testigo fué convicto de un delito grave (*felony*).''

El artículo 520 del Código de Enjuiciamiento Civil (edición de 1933) también dispone:

''Un testigo podrá ser tachado por la parte contra quien fuere llamado, mediante evidencia contradictoria, o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala; pero no con evidencia de determinados actos reprobables, salvo que podrá probarse mediante el examen del testigo, o la anotación de la sentencia, que fué convicto de delito grave (*felony*).''

Bajo estas circunstancias, no habiéndose demostrado un delito grave, hasta ahora no estamos convencidos de que la corte inferior estuviera equivocada en la posición por ella asumida.

██ El tercer señalamiento dice así:

''La Corte de Distrito de Humacao erró al definir el delito de asesinato en segundo grado toda vez que excluyó en su definición del delito el elemento de premeditación.''

El pasaje citado de las instrucciones de la corte es como sigue:

''La distinción entre los dos grados de este delito está en que en en el asesinato en primer grado la muerte tiene que ser deliberada y premeditada, a menos que haya sido cometida, al ejecutarse, o al intentarse ejecutar un incendio, como he dicho antes, una violación, un robo o escalamiento o una mutilación; mientras que en el asesinato en segundo grado la muerte no es ni deliberada ni premeditada, es la muerte ilegal con malicia, pero sin deliberación o premeditación.''

Lo que la corte realmente dijo fué que asesinato en segundo grado es la muerte ilegal con malicia, pero sin deliberación o premeditación. Los tres artículos aplicables son:

''Artículo 199.—Asesinato es dar muerte ilegal, a un ser humano, con malicia y premeditación.''

El texto inglés dice:

"Section 199.—Murder is the unlawful killing of a human being, with malice aforethought,"

pero debe .prevalecer el inglés.

"Artículo 200.—Dicha premeditación puede ser expresa o tácita. Es expresa cuando se manifiesta el propósito deliberado de quitar la vida ilegalmente a un semejante. Es tácita, cuando no resulta notable provocación, o las circunstancias que concurren a la muerte demuestran un corazón pervertido y maligno.

"Artículo 201.—Todo asesinato perpetrado por medio de veneno, acecho, o tortura, y toda clase de muerte alevosa, deliberada y premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, rapto, robo, asalto, o mutilación, constituye asesinato de primer grado; siendo de segundo grado todos los demás."

De una lectura de estos artículos se verá claramente que en todos los asesinatos es necesario que exista la malicia premeditada y la corte así lo hizo constar al principio de sus instrucciones. Ella es un requisito indispensable para el delito de asesinato, mas en un número 'de casos, tanto de asesinato en primer grado como de asesinato en segundo grado, la muerte puede no haber sido premeditada. o deliberada, aunque la malicia fuera premeditada o deliberada. Como la corte ya había 'dicho que la malicia debía ser premeditada, la parte de las instrucciones citadas sólo podía referirse al acto mismo de la muerte. Quizá podría decirse, conforme demostrarán las citas nuestras que hacemos más tarde, que en el asesinato en segundo grado puede haber ausencia de una intención expresa de matar, más la intención se infiere de la naturaleza 'del acto que produce la muerte.

Tomemos la definición de asesinato en primer grado dada por el artículo 201 supra, cuando el asesinato se comete por medio de veneno, acecho o tortura, o al tratarse de cometer uno de los delitos graves allí enumerados; el acusado puede no haber tenido idea consciente de matar o la muerte puede haberse cometido sin premeditación, y sin

embargo cada uno de los actos fué realizado con malicia premeditada, y en la mayoría de los casos también deliberada. Cuando una persona tortura a otra, actúa con malicia premeditada; cuando le da veneno ocurre lo mismo. Igualmente sucede cuando trata de cometer cualquiera de los delitos graves descritos en el artículo 201.

Quizá un caso familiar de asesinato en segundo grado es aquél en que una persona dispara a otra con intención meramente de herirla, pero por razón de algún descuido o debido a que la bala choca con otro objeto, mata a la víctima directamente, o la naturaleza de la herida produce su muerte, o se mata a un tercero. Al imputársele el delito de asesinato en segundo grado el acusado sería culpable, aunque no hubiera tenido la intención definida de matar a nadie, toda vez que el acto por él realizado lo fué con malicia premeditada o ésta fué de tal naturaleza.

Estas consideraciones están sostenidas por los siguientes casos de California: *People* v. *Long,* 39 Cal. 694; *People* v. *Foren,* 25 Cal., 361; 13 Cal. Jur. 603, *et seq.;* 29 Corpus Juris, 1118, párr. 105, *et seq.* y algunos de los párrafos anteriores.

California Jurisprudence dice a este respecto (13 Cal. Jur. 603, párr. 18):

"En General.—Todos los asesinatos que no sean de primer grado lo son de segundo grado. En su consecuencia, un asesinato es de segundo grado cuando no se perpetra por medio de veneno, acecho o tortura, ni se produce la muerte alevosa, deliberada y premeditadamente, ni se comete al perpetrarse o intentarse algún incendio de morada, rapto, robo, asalto o mutilación. Mas, para que constituya asesinato de este grado el acto de la muerte debe ser cometido con un fin criminal y realizado por medios aviesos. Se ha dicho que si la muerte se realiza sin la provocación y sin el arrebato de cólera que reduce el delito a homicidio, o si se comete al realizarse un acto ilegal, cuyas consecuencias naturales son peligrosas a la vida, o si se comete al tratarse de perpetrar un delito grave distinto a los mencionados en la definición de asesinato en primer grado o si las circunstancias de la muerte demuestran un corazón pervertido y maligno—el delito es asesinato en segundo grado, a menos que los he-

chos demuestren la existencia en la mente del victimario de una intención específica de privar de la vida a un semejante. Asesinato en este grado es la muerte ilegal con malicia, pero sin deliberación o premeditación. Cualquier indicación de que en el delito de asesinato en segundo grado puede haber la *intención de privar de la vida a un semejante*, debe considerarse como que se refiere a la intención que la ley imputa por razón de un motivo corrupto del matador o por algún otro motivo, y no debido al designio preconcebido de producir la muerte.

"Para reducir un delito de asesinato en primer grado a asesinato en segundo grado, no es esencial que la muerte sea cometida en el preciso momento que ocurre la provocación, ni tan inmediatamente después que la sangre no haya tenido tiempo para enfriarse. Si en realidad se da muerte a un semejante sin deliberación ni premeditación, excepción hecha de los casos especiales mencionados en el Código, el delito tan sólo es asesinato en segundo grado. En uno u otro caso la intención de arrebatar la vida a un ser humano existe como cuestión de derecho. En el asesinato en primer grado la prueba debe demostrar que existía la intención deliberada de privar de la vida a una persona, mientras que en el asesinato en segundo grado la intención de producir la muerte no es necesario que se pruebe, y puede de hecho no existir. Ella se infiere del hecho de la existencia de una muerte ilegal."

Véase también la nota al caso de *Demato* v. *People*, 35 L.R.A. (N. S.) 621; y algunos de los casos que figuran bajo el epígrafe de Homicidio, en el Tomo 10, Dec. Dig., *Key number* 23; Tomo 12, (2d) Dec. Dig., *Key numbers* 9 y 23; Tomo 14, (3d) Dec. Dig., *Key numbers* 9 y 23; *State* v. *Tippet*, 63 N. W. 445; *People* v. *Hubbard*, 220 Pac. 315.

Aunque no fueron discutidas tan directamente, hallamos apoyo para estas ideas en el caso de *Pueblo* v. *Rodríguez*, 34 D.P.R. 464.

El apelante cita nuestra decisión en el caso de *Pueblo* v. *Roldán*, 27 D.P.R. 786. Allí resolvimos que la corte estuvo equivocada al decir "que el asesinato en segundo grado existía cuando no había deliberación ni premeditación." Si quisimos significar que la corte estuvo equivocada al excluir el elemento de malicia premeditada, entonces podría subsistir la opinión y quizá sea susceptible de esa explica-

ción, pero en tanto en cuanto dicho caso está en conflicto con la presente opinión, el mismo debe considerarse revocado en ese sentido. Además, tal manifestación fué hecha incidentalmente al discutirse otro error.

■■ En los autos que tenemos ante nos, se verá que el apelante solicitó ciertas instrucciones especialmente respecto a homicidio voluntario y tomó excepción a algunas de las actuaciones de la corte. No solicitó que se enmendara la definición de asesinato en segundo grado y ni siquiera excepcionó las instrucciones en general, aunque, desde luego, las excepciones deben ser específicas. En el caso de *Pueblo* v. *Cardona,* 49·D.P.R. 108, hemos revisado las autoridades al efecto de que a la corte sentenciadora de ordinario debe dársele una oportunidad para corregir un error.

Creemos conveniente, toda vez que la cuestión se repite con tanta frecuencia, citar el artículo aplicable de la ley así:

"Artículo 1.—Siempre que resultare de los autos, en alguna causa criminal apelada a la Corte Suprema, que cualquier requisito legal haya sido desatendido por el tribunal sentenciador, no se anulará la sentencia a menos que el error que de los autos resultare, tendiere a perjudicar los derechos de cualquiera de las partes, y se hubiere interpuesto la debida excepción en el tribunal sentenciador; *Disponiéndose, sin embargo,* que el tribunal de apelación podrá conocer de errores fundamentales que aparecieren en los autos, aun cuando no se hubiere interpuesto objeción a ellos, y fallar sobre los mismos con arreglo al derecho que de los hechos se desprendiere." Ley aprobada el 30 de mayo, 1904, Leyes de 1905, pág. 16. (Véase el artículo 362 del Código de Enjuiciamiento Criminal, edición de 1935.)

De suerte, pues, que una vez más se hace evidente que la regla es que debe tomarse excepción en la corte de distrito. En lo que a cualquier posibilidad de un error fundamental se refiere, tomamos nota de que la prueba tendía a probar más bien asesinato en primer grado que asesinato en segundo grado, y que el letrado del acusado puede no haber interesado que el jurado considerara la cuestión de asesinato en primer grado *vel non,* y que en su consecuen-

cia no tratara de obtener una definición mejor de asesinato en segundo grado. De esto se hace más evidente que las instrucciones deben ser objeto de excepciones.

*La sentencia y la resolución declarando sin lugar la moción ·de nuevo juicio, deben ser confirmadas.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.