El Pueblo de Puerto Rico, demandante y apelado, *v.* Antonio Pelliccia, acusado y apelante.

Núms. 6934 y 6935.—*Sometidos:* Mayo 20, 1938. *Resueltos:* Julio 23, 1938.

*Martínez Nadal, Juliá & Hernández Matos*, abogados del apelante; *R. A. Gómez, Fiscal*, y *Luis Janer, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

Se acusó a Antonio Pelliccia de haber cometido el delito de asesinato en primer grado en la persona de Rafael Ralat, así como el delito de portar armas prohibidas. Ambos casos fueron vistos conjuntamente y el acusado declarado culpable de homicidio voluntario y del otro delito. En apelación,

ambos casos fueron discutidos el mismo día y para ellos se radicó un solo alegato. En su consecuencia, los dos recursos pueden ser resueltos con una sola opinión.

No se hizo señalamiento de error alguno a ese efecto, pero la cuestión relativa a la suficiencia de la acusación para imputar el delito de asesinato en primer grado se plantea por primera vez en apelación. La parte pertinente de la acusación dice que el acusado

". . . . voluntaria e ilegalmente, con malicia, premeditación, deliberación y propósito firme y decidido de darle muerte ilegal, atacó con un revólver, arma mortífera, al ser humano, Rafael Ralat, etc. . . .''

El acusado sostiene que se omitió el elemento de alevosía. El artículo 201 del Código Penal (edición de 1937), que define el delito de asesinato, dispone:

"*Grados de asesinato.*—Todo asesinato perpetrado por medio de veneno, acecho, o tortura, y toda clase de muerte alevosa, deliberada y premeditada, o cometida al perpetrarse o intentarse algún incendio de morada, rapto, robo, asalto, o mutilación, constituye asesinato de primer grado; siendo de segundo grado todos los demás.''

Conforme indicamos en el caso de *El Pueblo* v. *Belardo,* 50 D.P.R. 512, existe una discrepancia entre la versión inglesa y castellana. Donde la versión inglesa dice "or by any other kind of *wilful,* deliberate and premeditated killing,'' el equivalente en castellano lee: "y toda clase de muerte *alevosa,* deliberada y premeditada.'' La palabra "wilful'' ha sido traducida al castellano como "alevosa'', que tiene un significado enteramente distinto. No hay duda alguna de que en lo que se refiere al Código Penal, que fué aprobado antes de 1917, la versión inglesa debe prevalecer. *Pueblo* v. *Belardo,* supra. La acusación cumple con los requisitos del artículo 201, supra, según el mismo lee en inglés. Se imputa claramente que la muerte fué voluntaria, deliberada y premeditada.

Se señalan tres errores. El primero de ellos lee así:

"El veredicto rendido por el jurado en este caso es contrario a la prueba presentada en el mismo.''

La contención del apelante no puede prevalecer. La prueba de cargo tendió substancialmente a demostrar que Pelliccia y Ralat, el occiso, estaban asociados en el deporte localmente popular de riña de gallos; que Ralat cuidaba y adiestraba los gallos de Pelliccia; que el día de la muerte, el acusado había perdido algunas peleas y debido a las condiciones del clima advirtió a Ralat que no permitiera que el último gallo que le quedaba se mojara y acusó a Ralat de estar confabulado con su contrario; que Ralat se encolerizó al ver la actitud de Pelliccia y se negó a continuar cuidándole los gallos y que Pelliccia, según los testigos de cargo, entonces se acercó a Ralat en actitud amenazadora y le dijo que él creía o había creído que Ralat era una persona decente, y otras palabras similares. La prueba entonces tendió a demostrar que Ralat agredió a Pelliccia en la cara y que este último inmediatamente echó a correr en su caballo. El Pueblo presentó a Miguel y a Pelegrín Hernández como testigos oculares del disparo, y éstos declararon que iban en dirección de su casa acompañados de Rafael Ralat, entre cuatro y cinco de la tarde, cuando el acusado, que estaba escondido detrás de una maleza, le disparó a Ralat por la espalda; que el acusado estaba en terrenos pertenecientes a Desiderio Luciano, a orillas del camino, y que después del disparo corrió en dirección a su propia finca. Otro testigo, Anastasio Pola, declaró que vió que el acusado corría hacia su casa poco después de oír el disparo que más tarde resultó ser el disparo fatal.

El acusado presentó un caso de defensa propia. Los hechos esenciales del incidente ocurrido en la gallera son admitidos, pero la versión de los testigos del acusado fué que Pelliccia meramente le dijo a Ralat que cuidara de que el gallo no se mojara y que Ralat entonces le contestó que él era un intruso y le tiró con el gallo en forma muy desagradable; que cuando Pelliccia le presentó sus excusas diciéndole que no había tenido la intención de ofenderle, Ralat le

pegó en la cara, y cuando Pelliccccia se iba, Ralat dijo: "Tienes tus hijos, pero no los vas a criar." Respecto al disparo los testigos Eladio Serrano y Rafael Pantoja declararon que habían ido a la finca del acusado con el objeto de llegar a un entendido en relación con una parcela de terreno que iban a cultivar a medias con Pelliccia y que los tres habían volteado la finca cuando vieron que Ralat venía por el camino que atraviesa la finca del acusado; que al ver al acusado, que estaba en su propia finca, el interfecto soltó el gallo que portaba y dijo: "Ahora te voy a arreglar" o "Aquí está el sin vergüenza", y al mismo tiempo sacó una navaja barbera y atacó al acusado, quien retrocedió unos cuantos pasos, sacó su revólver y disparó contra el occiso.

En su alegato el·acusado copia los puntos salientes de las declaraciones de Serrano y Pantoja y descansa en ellas para convencernos de que el veredicto del jurado era contrario a la prueba. No se trata siquiera de discutir toda la prueba ni de demostrar que la de cargo no debió haber sido creída por el jurado. El conflicto claro en la prueba aducida por los varios supuestos testigos oculares fué resuelto a favor de El Pueblo. Bajo las circunstancias del caso, esta corte está prácticamente obligada a sostener el veredicto del jurado, que oyó a los testigos y que se encontraba en mejor posición para determinar su credibilidad. *Pueblo* v. *Colón*, 42 D.P.R. 53; *Pueblo* v. *Rosado*, 17 D.P.R. 441; *Pueblo* v. *Villegas*, 6 D.P.R. 223. No existe tentativa alguna de imputar al jurado pasión, prejuicio o parcialidad, ni la comisión de manifiesto error. Véanse *Pueblo* ·v. *Goitía*, 5 D.P.R. 121; *Pueblo* v. *Dessús*, 12 D.P.R. 342; *Pueblo* v. *Jiménez*, 48 D.P.R. 14 y *Pueblo* v. *Vázquez*, 48 D.P.R. 425.

El segundo señalamiento de error lee así:

"La Corte de Distrito de Ponce cometió grave y perjudicial error al declarar al acusado culpable del delito de portar armas."

Éste depende para su validez de las mismas cuestiones que el primero, toda vez que está envuelta la credibilidad de las

declaraciones de idénticos testigos. Por las razones antes expuestas, el error no puede favorecer al apelante. La prueba creída por el jurado bastaba para demostrar que el acusado disparó desde un punto fuera de su propia finca y que en su consecuencia era culpable de portar un arma prohibida.

El último señalamiento plantea la objeción aducida a cierta declaración dada en *rebuttal* por un juez de paz con el objeto de establecer la buena reputación del finado. Se desprende que la defensa había atacado previamente la reputación del interfecto y tratado de presentarlo ante el jurado como un hombre pendenciero y guapo, como un hombre temible y realmente temido por la comunidad. Con estos antecedentes el fiscal puso al juez de paz local en la silla de los testigos y le preguntó si alguna vez se había visto precisado a intervenir con Rafael Ralat. El testigo contestó en forma negativa, luego de haber la corte desestimado la objeción del acusado y de haberse anotado la excepción correspondiente.

El señalamiento se basa en el artículo 158 de la Ley de Evidencia, que dispone: (Estatutos Revisados de 1911, séc. 1526.)

"Un testigo podrá ser tachado por la parte contra quien fuere llamado, mediante evidencia contradictoria, o de que su reputación en cuanto a veracidad, honradez o integridad es generalmente mala; pero no con evidencia de determinados actos reprobables, salvo que podrá probarse mediante el examen del testigo, o la anotación de la sentencia, que fué convicto de delito grave (*felony*)."

No podemos ver la aplicación del artículo anterior al incidente aquí envuelto. Se había atacado la reputación o carácter del interfecto y el fiscal meramente ejercía el privilegio de tratar de establecer la buena reputación de éste. No se trató en absoluto de impugnar la credibilidad de ningún testigo específico. El propio acusado levantó la cuestión relativa a la reputación del interfecto y de ese modo abrió

las puertas al fiscal. Además, el error, de haberse cometido, no hubiera sido perjudicial.

*Deben confirmarse las sentencias de la corte inferior.*

Los Jueces Asociados Señores Travieso y De Jesús no intervinieron.