EL PUEBLO DE PUERTO RICO, demandante-apelado, *v.* MO-
DESTO COTTO TORRES, acusado-apelante.

*Número:* 16841        *Resuelto:* 5 de abril de 1963

*Santos P. Amadeo* y *Gerardo Ortiz del Rivero,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Héc-*

*tor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Acusado por los delitos graves de Asesinato en Primer Grado e infracciones a los Arts. 6 y 8 de la Ley de Armas, y previo juicio por jurado, Modesto Cotto Torres fue declarado culpable del delito de Asesinato en Segundo Grado y de ambas infracciones a la Ley de Armas. El día 11 de marzo de 1960 fue condenado por el tribunal de instancia a sufrir las siguientes penas:

a) indeterminada de quince a treinta (15 a 30) años de presidio por el delito de asesinato en segundo grado;

b) indeterminada de dos a cinco (2 a 5) años de presidio por el delito de infracción al Art. 8 de la Ley de Armas; y

c) indeterminada de uno a cinco (1 a 5) años de presidio por el delito de infracción al Art. 6 de la Ley de Armas.

En su alegato imputa ocho errores al tribunal sentenciador. Tanto la representación del acusado como el Procurador General han sometido sendos y bien elaborados alegatos en que analizan a cabalidad las distintas cuestiones planteadas.

Resolvemos que no se han cometido ninguno de los referidos errores como discutiremos a continuación.

*"PRIMER ERROR*: COMETIO ERROR EL JUEZ SENTENCIADOR AL RECIBIR LOS VEREDICTOS DICTADOS CONTRA EL ACUSADO APELANTE, YA QUE, NO HABIENDO SIDO RENDIDOS POR UNANIMIDAD, ESTOS SON NULOS POR ESTAR EN CONFLICTO CON LA CLAUSULA DEL DEBIDO PROCESO DE LEY DE LAS ENMIENDAS V O XIV DE LA CONSTITUCION FEDERAL."

Esta cuestión fue resuelta adversamente a la contención del apelante en *Fournier* v. *González,* 80 D.P.R. 262 (1958) y en *Fournier* v. *González,* 269 F.2d 26 (1959). Además, idéntica cuestión fue planteada en *Cotto Torres* v. *Delgado,* Hábeas Corpus 955 resuelto en 17 de marzo de 1961, en que declaramos sin lugar el auto de hábeas corpus, resolución que fue confirmada por la Corte de Apelaciones para el Primer Circuito, en 4 de mayo del mismo año, habiéndose

denegado por el Tribunal Supremo de Estados Unidos el auto de *certiorari* contra esta última resolución, *Torres* v. *Delgado*, 368 U.S. 944 (1961).

"*SEGUNDO ERROR*: LOS VEREDICTOS DICTADOS SON NULOS E INEFICACES PORQUE AL ACUSADO SE LE PRIVO DEL DERECHO A SOLICITAR EL *POLLING* DEL JURADO, EN VIOLACION DE LA CLAUSULA DEL DEBIDO PROCESO DE LEY, DE LA ENMIENDA V O XIV DE LA CONSTITUCION FEDERAL, YA QUE ASI LO PROHIBE LA LEY NUM. 7 DE 29 DE DICIEMBRE DE 1950."

■ Esta cuestión ya ha sido resuelta en forma contraria a las pretensiones del acusado-apelante en *Jaca Hernández* v. *Delgado*, 82 D.P.R. 402 (1961), y no se nos ha presentado motivo alguno que justifique alterar el razonamiento y la conclusión a que llegamos en dicho caso sobre la referida cuestión.

"*TERCER ERROR*: LA CORTE SENTENCIADORA ERRO AL ACEPTAR LOS VEREDICTOS DICTADOS CONTRA EL ACUSADO-APELANTE POR SER ESTOS NULOS, YA QUE NO SE AJUSTABAN A LOS ARTICULOS 282 y 290 DEL CODIGO DE PROCEDIMIENTO CRIMINAL, SEGUN ESTOS FUERON ENMENDADOS POR LA LEY NUM. 11 DE 19 DE AGOSTO DE 1948 Y POR LA LEY NUM. 7 DE 29 DE DICIEMBRE DE 1950."

■ Convenimos con el Procurador General que no se cometió este error. Transcribimos a continuación su argumentación sobre esta cuestión:

"El Artículo 282 del Código de Enjuiciamiento Criminal, 34 L.P.R.A., sec. 813, lee como sigue:

'Al volver el jurado a la sala, el tribunal, o el Secretario del mismo, debe preguntar al que presida, *si ése es el veredicto del jurado y cuántos jurados concurren en el mismo.* Si el presidente responde que ése es el veredicto del jurado, y dicho veredicto se ajusta a la ley, éste será aceptado por la corte.' [Énfasis del Procurador.]

"El Artículo 291 (2) del mismo Código [ (2) En su alegato el acusado-apelante alude al Artículo 290, pero es evidente que debe ser al 291. El 290, referente a la votación individual del

jurado fue enmendado por la *Ley Núm. 11 de 19 de agosto de 1948, pág. 213, Art. 5, y derogado por la Ley Núm. 7 de 29 de diciembre de 1950,* pág. 387], 34 L.P.R.A. sec. 821, dispone del siguiente modo:

'Si el veredicto fuere de tal índole que el tribunal pudiera recibirlo, el secretario lo hará inmediatamente constar íntegro en el acta, lo leerá en alta voz y preguntará al presidente *si ése es el veredicto del jurado y cuántos jurados concurren en el mismo.* Si el presidente responde que ése es el veredicto del jurado, y dicho veredicto se ajusta a la ley, éste será aceptado por la Corte considerándose consumado el veredicto y se disolverá el jurado.' [Énfasis del Procurador.]

"Al regresar el jurado a la sala, y luego de haber deliberado, ocurrió el siguiente incidente [en este caso] (T.E. págs. 2704–2705):

'Hon. JUEZ:
Señor Presidente del Jurado, ¿han llegado a un veredicto?

Sr. PRESIDENTE DEL JURADO:
Sí señor.

Hon. JUEZ:
Tenga la bondad de entregarlo al marshal. Señor Secretario, lea el veredicto.

Sr. SECRETARIO (Leyendo):
"El Pueblo de Puerto Rico versus Modesto Cotto Torres, Asesinato en Primer Grado. Nosotros, los señores del Jurado, declaramos al acusado Modesto Cotto Torres, culpable del delito de Asesinato en Segundo Grado. San Juan, P.R., 24 de febrero de 1960. Jaime Frau Llinás, Presidente del Jurado."

'Hon. JUEZ:
¿*Ese es el veredicto de por lo menos tres cuartas partes o más de los miembros del jurado*? [Énfasis del Procurador General.]

Sr. PRESIDENTE DEL JURADO:
Sí, señor.

Hon. JUEZ:

Entonces la Corte acepta el veredicto del jurado por ser formal y conforme a derecho, lo declara consumado y, en su consecuencia, declara al acusado, Modesto Cotto Torres culpable y convicto del delito de Asesinato en Segundo Grado, y señala el día 3 de marzo de 1960, a las nueve de la mañana, para pronunciar sentencia.'

"En las páginas 2706–2708 de la transcripción de evidencia, aparece sustancialmente el mismo diálogo entre el Magistrado y el Presidente del Jurado con relación a los otros dos veredictos rendidos en los casos por Infracción a la Ley de Armas.

"Sostiene el acusado-apelante que esos veredictos son nulos porque, en violación a las disposiciones del Código de Enjuiciamiento Criminal antes transcritas, el Magistrado no preguntó específicamente *cuántos* jurados concurrían en los respectivos veredictos sino que se limitó a preguntar el resultado en términos de 'por ciento'.

"Entendemos que la cuestión no tiene el alcance que pretende atribuirle el acusado-apelante.

"El Artículo II, sec. 11, de nuestra Constitución dispone:

'En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial *compuesto por doce vecinos del distrito, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve.*' [Énfasis del Procurador General.]

"Quedó así incorporado en forma permanente en nuestro sistema de justicia penal el derecho a juicio por jurado en procesos por delitos graves fijándose en igual forma en doce (12) el número de jurados quedando reservado al poder legislativo la facultad de aumentar el margen de mayoría hasta la unanimidad, si así lo considerare conveniente en el futuro. *Informe de la Comisión de Carta de Derechos,* Rev. Jur. U.P.R. Vol. XXI, Núm. 1, pág. 18.

"El *Artículo 185 del Código de Enjuiciamiento Criminal,* 34 L.P.R.A., sec. 612, dispone:

'En todos los casos en que, conforme a las leyes de Puerto Rico un jurado debe rendir un veredicto, *dicho veredicto será por acuerdo de no menos de tres cuartas (¾) partes del jurado.*' [Énfasis del Procurador General.]

"El artículo 280 del mismo Código, 34 L.P.R.A., sec. 811, dispone:

'Después que tres cuartas (¾) partes de los miémbros del jurado hayan llegado a un acuerdo acerca del veredicto, el oficial encargado de su guarda los conducirá al tribunal donde se le llamará por sus nombres, y si faltare alguno, los demás serán despedidos sin pronunciar el veredicto. En ese caso la causa podrá ser juzgada nuevamente en el mismo período o en otro.'

"Como puede observarse, el sistema de ley vigente por mandato de la Legislatura y de conformidad con la cláusula Constitucional, establece que el veredicto en una causa criminal deberá ser por mayoría de votos de *no menos de tres cuartas (¾) partes de los miembros del jurado, o sea no menos de nueve de los doce que lo componen.* No cabe la menor duda, pues, de que cuando el Magistrado le pregunta al Presidente del Jurado si '*¿Ese es el veredicto de por lo menos tres cuartas partes o más de los miembros del Jurado?*', como cuestión de realidad le estaba preguntando si el veredicto era *de no menos de nueve (9)* de los doce (12) miembros del jurado que se encontraban presentes en sala después de la deliberación. Indiscutiblemente la pregunta equivalía a preguntar *cuántos jurados habían concurrido en el veredicto* de tal modo que con su contestación pudo asegurarse el Magistrado, para satisfacción de las partes, que el veredicto se ajustaba a la ley.

"Por otro lado, creemos conveniente llamar la atención hacia el hecho de que el Magistrado al terminar sus instrucciones se dirige a los miembros del jurado en los siguientes términos:

'Entonces, el tribunal les recuerda a la (sic) dama y a los caballeros del jurado que el *veredicto debe ser el producto del criterio de por lo menos tres cuartas partes de ustedes, o sea, nueve de ustedes doce.* Nombra Presidente al jurado señor Frau.' (T.E. pág. 2699.) [Énfasis del Procurador.]

"Habiéndose trasmitido esta instrucción, precisamente momentos antes de retirarse el jurado a deliberar, no puede sino concluirse, por inferencia lógica, la imposibilidad de fraude, o siquiera de error en el cálculo matemático respecto de *cuántos miembros del jurado habían concurrido en el veredicto.*

"Finalmente deseamos señalar que la defensa no levantó objeción alguna sobre el particular, y es ahora en apelación que

levanta por primera vez la cuestión, c.f. *Jaca Hernández*, v. *Delgado*, supra, págs. 410, *et seq.* Si él consideró que la actuación del tribunal *a quo* le había sido perjudicial a sus derechos debió haberle llamado oportunamente la atención a fin de que corrigiera el supuesto error que ahora se le imputa. *Pueblo* v. *Lampón*, 78 D.P.R. 109, 113 (1955)."

Por las razones que anteceden resolvimos que no cometió este error.

"*CUARTO ERROR:* LA CORTE SENTENCIADORA ERRO AL INSTRUIR AL JURADO SOBRE LA TEORIA DE DEFENSA PROPIA."

■ Las instrucciones a que se refiere el acusado-apelante son las siguientes:

"El acusado alega la defensa propia y él está en la obligación de aportar evidencia en apoyo de su alegación, pero él no está en la obligación de aportar, de introducir evidencia suficiente para convencer al jurado que él actuaba en defensa propia fuera de duda razonable. Quiero decir que está en la obligación de aportar evidencia, fuera de duda razonable, de que actuaba en defensa propia. Es suficiente si él introduce evidencia de la defensa propia, que considerada por los señores del jurado en conjunto con toda la evidencia del caso, levante en la mente de los señores del jurado una duda razonable de la culpabilidad del acusado." (T.E. págs. 2678–2679.)

La corrección de unas instrucciones como éstas fue sostenida por este Tribunal en el caso de *Pueblo* v. *Ramírez*, 50 D.P.R. 234 (1936), a la página 257. Debemos señalar que la segunda oración de tales instrucciones es a todas luces errónea. Creemos que se trata de un error de transcripción incurrido por el taquígrafo de récord, pues no es lógico que el tribunal juzgador haya hecho una manifestación tan claramente contradictoria con el resto de la instrucción.

Debe tenerse en cuenta, además, que el Tribunal sentenciador dio amplias instrucciones respecto de la presunción de inocencia que asiste siempre al acusado y respecto del concepto de duda razonable, e hizo énfasis en el sentido de que si el jurado tenía duda en cuanto a si el acusado actuó o no en defensa propia, esa duda tenía que resolverla en su

favor porque era al Ministerio Público a quien correspondía establecer la culpabilidad más allá de duda razonable. (T.E. págs. 2667–2669; 2679–2681; 2696–2697.)

Por las razones que anteceden resolvemos que no se cometió este error.

*"QUINTO ERROR:* LA CORTE SENTENCIADORA ERRO AL INSTRUIR AL JURADO DE QUE SI LA DEFENSA NO PUSO A LA DISPOSICION DEL FISCAL LOS TESTIGOS QUE NO DECLARARON, LA PRESUNCION DE LEY ES QUE DE HABERSE PRESENTADO ESTOS TESTIGOS, HUBIESE RESULTADO ADVERSO SU TESTIMONIO A LA PARTE QUE NO LOS PRESENTO."

El Tribunal sentenciador trasmitió al jurado las siguientes instrucciones: (T.E. págs. 2686–2687.)

"En el caso en que el fiscal renunció a un número de testigos —ustedes recuerdan esto cuando fueron renunciados, estando ustedes aquí y en presencia de ustedes—el fiscal anunció que tendrían carácter acumulativo esos testimonios y los puso a disposición de la defensa. La defensa, entonces, presentó entre esos testigos, un testigo que había renunciado el fiscal. Es el testigo Rodríguez Sierra, José Manuel Rodríguez Sierra, conocido por Putty, y lo sentó a declarar entonces como testigo de defensa. En esas circunstancias ustedes son los llamados a determinar si esa prueba—ustedes oyeron toda la otra prueba del fiscal y oyeron el testimonio de José Manuel Rodríguez Sierra en corte abierta—ustedes determinan independientemente de presunción de ley, si en efecto era adversa o era acumulativa o cómo era esa prueba a los fines que ustedes le den a la declaración la apreciación que hayan de dar. En el caso la defensa renunció al testimonio de dos testigos: el doctor Escudero y otro testigo, que también anunció la defensa que resultarían prueba acumulativa y los puso a disposición del fiscal. En esa forma, pues, no operó la presunción; quedó destruida porque se cumplió con el requisito de ley de anunciar que era acumulativo su testimonio y se pusieron a disposición del fiscal. Hay otros testigos aquí que la defensa anunció como testigos de defensa, como el Lic. Cayetano Coll Pujols, el Juez Ricardo Calderón, el Lic. Tomás Sandoval Cruz, el Policía Alers, el Policía Castillo, no recuerdo si alguno otro, en relación con los cuales la defensa no hizo anuncio alguno al terminar su prueba. Creo que si con respecto

a esos testigos no se hizo anuncio alguno, pues la presunción de ley es que de haberse presentado hubiese resultado adverso su testimonio a la parte que no los presentó."

El récord no demuestra que la representación del acusado objetase esta instrucción u ofreciese una exposición sustituta o aclaratoria de la misma o que sugiriera al tribunal que la aclarase o que rectificase.

■ Creemos que las referidas instrucciones son correctas. El Art. 102 de la Ley de Evidencia, 32 L.P.R.A. sec. 1887, en su inciso 5, establece una presunción controvertible de "que toda evidencia voluntariamente suprimida resultará adversa si se ofreciere". Pero dicha presunción no surge cuando la evidencia no se ofrece porque es de carácter acumulativo y se pone a la disposición de la otra parte. En *Pueblo* v. *Ramírez*, 50 D.P.R. 234 (1936), al terminar un breve examen de un testigo de la acusación, el abogado defensor solicitó y obtuvo una orden para que el testigo quedase bajo las reglas de la corte, quedando así el testigo a disposición de ambas partes. Pero ninguna de ellas lo utilizó. El tribunal sentenciador se negó a instruir al jurado al efecto de que el fiscal suprimió la evidencia de ese testigo y por lo tanto era de presumir que le hubiera sido adversa. En su lugar el tribunal instruyó que el testigo estaba a disposición de ser llamado por cualquiera de las partes; que "se puede considerar que ha sido la evidencia suprimida por ambas partes". Señalado como error el dictamen negativo con respecto a la instrucción solicitada, dijimos entonces:

"Es cierto que un acusado está protegido por la presunción de inocencia que la ley establece a su favor y que no está obligado a declarar ni a presentar prueba alguna en su defensa. Pero también es cierto que si una vez probado el hecho de la muerte a manos del acusado, éste alega la defensa propia, sobre él recae entonces el peso de la prueba para establecer por lo menos un caso prima facie de legítima defensa. Y como consecuencia tenemos que llegar a la conclusión de que *si un acusado* durante el trámite de substanciación de su alegada legítima

defensa, *suprime voluntariamente la declaración de un testigo que tiene a su disposición, esa supresión de evidencia da lugar a la presunción de que la evidencia fue suprimida por el temor de que le fuera adversa.*" (Énfasis nuestro.) Cf. *Pueblo* v. *Torres González*, 86 D.P.R. 252 (1962).

Resolvemos, por lo tanto, que el tribunal de instancia no incurrió en tal error.

*"SEXTO ERROR:* LA CORTE ERRO AL PERMITIR QUE EL FISCAL DIJERA QUE EL ACUSADO ERA UN VERDUGO E HICIERA OTRAS MANIFESTACIONES PERJUDICIALES AL DERECHO DEL ACUSADO A UN JUICIO IMPARCIAL."

A continuación transcribimos la discusión que de este error hace el Procurador General:

"El incidente que sirve de base al acusado-apelante para este señalamiento de error se encuentra en la transcripción de evidencia, a las páginas 2527 a 2528, y es el siguiente:

'Lic. ANDREU RIBAS (Interrumpiendo):

Señor juez, nosotros vamos a llevar una objeción a esta situación que plantea el fiscal en su informe, y es la siguiente: Nosotros la argumentación de que la viuda está vistiendo de luto y toda esa situación la pasamos por alto, pero me parece que la viuda no está pidiendo nada aquí. El que pide es El Pueblo de Puerto Rico. El fiscal está haciendo, a mi juicio, un uso indebido de esta situación. De manera que están estas dos señoras desde el comienzo del juicio en el primer banco a la mano derecha del salón ante el jurado. Me parece que si se excede el fiscal en este salón a nombre de las viudas en el barrio Venezuela, ya es una cosa general, pero me parece, Vuestro Honor, que no se debe decir que la viuda está pidiendo. Yo paso por alto que el fiscal dijera, le llamara al acusado verdugo, pero me parece, señor juez, que esto no está contemplado en los informes de esta naturaleza. Al acusado se presume inocente hasta ahora y hasta que el jurado lo encuentre culpable más allá de duda razonable; y no debe ser objeto de estos epítetos, Vuestro Honor, cuando la defensa objeta esta clase de epítetos, señor juez, sobre todo desde el comienzo de la prueba que el fiscal comienza empleando esa clase de epítetos. Me parece incorrecto. Lo más serio de esto que aquí la viuda no tiene derecho

34

a pedir nada; ni el fiscal es portador de la viuda. Este no es un *caso* que va a resolverse, a mi juicio, que no va a resolverse por sentimentalismos que aquí alguien llore, porque venga enferma ni porque alguien venga vestido de luto al tribunal. Me parece que no es un asunto muy serio.

Hon. JUEZ:

La corte declara sin lugar la objeción. La defensa tendrá oportunidad de refutar el argumento del fiscal. El fiscal tiene derecho a hacer sus argumentos. Adelante.'

". . . El récord no revela las circunstancias concurrentes en el momento en que según se alega el fiscal llamó '*verdugo*' al acusado-apelante. [3] [ (3) Obsérvese que en la transcripción de evidencia, pág. 2527, no aparece transcrito la parte del informe ante el jurado ofrecido por el Fiscal Ortiz Juan, en el curso del cual, según la defensa, el fiscal llamó *verdugo* al acusado.] Todo parece indicar que el incidente pasó inadvertido y que poca importancia tuvo. . . . [E]l propio abogado defensor manifestó que él había pasado por alto el hecho de que el fiscal llamara *verdugo* al acusado. Ni siquiera excepcionó la resolución del Tribunal de instancia cuando éste declaró sin lugar la cuestión levantada por la defensa. (T.E. pág. 2528.) Tampoco se ha demostrado que en efecto ese comentario aislado causara perjuicio alguno al acusado. Además, la prueba presentada por el ministerio público es tan fuerte, robusta y convincente que resulta increíble que el jurado hubiera rendido un veredicto distinto aún si el fiscal no hubiera hecho el comentario. Sobre este particular se dice en *Pueblo* v. *Ojeda,* 66 D.P.R. 419, a la página 422, 'La doctrina generalmente aceptada es al efecto de que manifestaciones impropias aisladas del fiscal no serán causa de revocación cuando el caso de El Pueblo descansa en prueba tan robusta y convincente que aún sin dichas manifestaciones el veredicto hubiera sido el mismo'."

Cf. *Pueblo* v. *Carrión Molina,* 86 D.P.R. 359 (1962); *Pueblo* v. *Rivera Romero,* 83 D.P.R. 471 (1961).

Creemos, por lo tanto, que el error señalado no amerita la revocación de la sentencia.

*"SEPTIMO ERROR:* LOS VEREDICTOS DICTADOS CONTRA EL ACUSADO APELANTE SON NULOS E INEFICACES POR HABER VIOLADO EL FISCAL EL ARTICULO II, SECCION 11, INCISO 3 DE LA CONSTITUCION DE PUERTO RICO."

El incidente que motiva este señalamiento de error ocurrió en ocasión en que el Lic. William Luyando Charneco prestaba su testimonio como testigo de defensa e iba a declarar respecto de lo que él había observado en su oficina y lo que allí le había dicho el acusado. El fiscal objetó a que el testigo declarara sobre ese extremo y ocurrió entonces el siguiente incidente: (T.E. págs. 1236–1237.)

"Hon. Fiscal ORTIZ JUAN:

Señor juez, hay dos razones por las cuales no debe ni puede el compañero Luyando, como testigo que es, decir lo que le dijo el acusado: *Una es que el acusado está aquí para decirlo, si quiere decirlo* . . .

Lic. ANDREU RIBAS:

Un momentito. Vuestro Honor, ha cometido un error grave el fiscal . . ."

■ Ocurrido el incidente la defensa solicitó del Tribunal que decretara un *"mistrial"* fundándose en que el fiscal había comentado indebidamente el *silencio del acusado.* Discutido el planteamiento, el Tribunal lo declaró sin lugar e inmediatamente procedió a instruir específicamente sobre el derecho del acusado de abstenerse de declarar, les llamó la atención para que bajo ningún concepto consideraran en sus deliberaciones el hecho de que el acusado no hubiera declarado o presentado prueba en su defensa, y recriminó duramente al fiscal por el comentario que había hecho. El Tribunal preguntó, además, a los miembros del jurado si tomarían en cuenta el comentario del fiscal. El jurado respondió, "No señor". (Véase T.E. págs. 1243–1247.) También les instruyó sobre ese mismo extremo en sus instrucciones generales. (Véase T.E. pág. 2692.)

La Sec. 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico en lo pertinente dispone:

"Nadie será obligado a incriminarse mediante su propio testimonio y *el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra.*" (Énfasis nuestro.) Antes de adoptarse nuestra Constitución existían en Puerto Rico varias disposiciones estatutarias en virtud de las cuales, por vía de interpretación judicial, se le había extendido a todo acusado la misma protección y garantía.

El Artículo 2, inciso 3, de la Carta Orgánica de 1917 (1 L.P.R.A. sec. 2, pág. 55) disponía:

"Ninguna persona será considerada responsable de un delito sin el debido procedimiento de ley; y ninguna persona será puesta dos veces en riesgo de ser castigada por el mismo delito, *ni será obligada en ninguna causa criminal a ser testigo contra sí misma.*" (Énfasis nuestro.)

El Artículo 7 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 7, lee como sigue:

"A nadie podrá obligarse a declarar en contra suya, en un proceso criminal; ni a ningún acusado de delito público podrá sometérsele, antes de ser sentenciado, a mayor restricción que la necesaria para que conteste a la acusación."

El Artículo 29, inciso 2, del mismo Código (34 L.P.R.A. sec. 59) dispone:

"Si después de oída la denuncia, el acusado alegare su inocencia, el juez procederá en la siguiente forma: . . . *Si el acusado no declarare tal circunstancia no podrá utilizarse en su contra.*" (Énfasis nuestro.)

No creemos que la manifestación del fiscal antes transcrita en que se basa este error, constituye un comentario sobre el silencio del acusado. No se expresó directamente, ni puede inferirse de tal comentario que se hacía alusión alguna al silencio del acusado como se hizo en *Pueblo* v. *Roldán*, 27 D.P.R. 786 (1919); *Pueblo* v. *Estrada*, 51 D.P.R. 815 (1937); y *Pueblo* v. *Díaz*, 69 D.P.R. 621 (1949). Concluimos, por lo tanto, que no se incurrió en el referido error.

*"OCTAVO ERROR:* LA CORTE SENTENCIADORA ERRO AL NO PERMITIR QUE EL FISCAL ENTREGARA A LA DEFENSA COPIAS DE LAS DECLARACIONES DE LOS TESTIGOS A LOS QUE EL HABIA RENUNCIADO, POR CONSTITUIR DICHAS DECLARACIONES PRUEBA ACUMULATIVA."

Al terminar el fiscal de presentar su prueba anunció al tribunal que renunciaba al resto de los testigos de cargo, cuyos nombres aparecían al dorso de la acusación, y los ponía a la disposición de la defensa porque consideraba que el testimonio de esos testigos habría de ser prueba acumulativa. La defensa entonces solicitó que le fueran entregadas *todas* las declaraciones juradas prestadas por estos testigos ante el fiscal durante la investigación preliminar. Discutida ampliamente la cuestión por ambas partes, el tribunal denegó la petición de la defensa pero le concedió a ésta todo el tiempo que estimare necesario para entrevistar a cada uno de los testigos renunciados por el fiscal.

Se alega que el tribunal sentenciador cometió error al no darle a la defensa acceso a las declaraciones juradas prestadas por los testigos de cargo cuyos testimonios fueron renunciados por el fiscal.

Resolvimos en *Pueblo* v. *Ribas*, 83 D.P.R. 386 (1961), que el acusado tiene derecho a obtener copia de cualquier declaración que haya prestado un testigo de cargo, si la solicita luego de haber éste prestado testimonio y cuando esté en el turno de repregunta, si la misma se refiere a los hechos en controversia en el caso que se está ventilando. En *Pueblo* v. *Díaz Díaz*, 86 D.P.R. 558 (1962), dictaminamos que si el testigo que renuncia el fiscal es utilizado por la defensa, y luego de declarar sobre los hechos del caso surge que éste ha prestado anteriormente una declaración jurada sobre los mismos hechos, es deber del fiscal facilitársela a la defensa. En ambas situaciones, el juez que preside la vista examinará la declaración antes de entregarla a la defensa para determinar si la misma contiene información que deba ser man-

tenida confidencial "para fines de una efectiva persecución del delito."

Pero la situación en el caso ante nos es completamente distinta pues aquí se trataba de testigos que el fiscal resolvió no utilizar y que puso a disposición de la defensa y ésta, antes de ponerlos a declarar, solicitó todas las declaraciones juradas prestadas por estos testigos ante el fiscal durante la investigación preliminar. Idéntica cuestión fue objeto de consideración en el caso de *Pueblo* v. *Ramos Cruz*, 84 D.P.R. 563 (1962). Establecimos en esa ocasión que bajo tales circunstancias el acusado no tiene derecho a obtener la declaración solicitada. No se nos ha presentado razón alguna de peso que nos convenza que debemos revocar esta doctrina. Por lo tanto, resolvemos que no se cometió el octavo error apuntado.

*Se confirmará la sentencia.**

—o—

## EN MOCIÓN DE RECONSIDERACIÓN

San Juan, Puerto Rico, a 28 de junio de 1963

PER CURIAM: Se solicita la reconsideración de la sentencia que confirmó la dictada por el tribunal de instancia. Como fundamento se aduce que contrario a la determinación que hicimos en relación con un comentario del fiscal al efecto de

---

*NOTA DEL COMPILADOR: La sentencia en este caso expresa:—

"El Juez Asociado señor Santana Becerra hace constar—consecuente con el criterio que expresó en *Pueblo* v. *Díaz Díaz*, 86 D.P.R. 558 (1962)—que en su opinión el acusado tenía derecho a que se le suministraran las declaraciones juradas de los testigos renunciados por el fiscal como prueba acumulativa, como un elemento de juicio en la preparación de su prueba, y porque en esa etapa, la razón de ser de la secretividad del sumario fiscal, justificada o no, ya ha perdido su virtualidad y la cuestión debe descansar en una sana discreción del tribunal juzgador que proteja adecuadamente los derechos del acusado; pero a la luz de todos los hechos y demás circunstancias presentes en el récord relacionados con la negativa a ordenar la entrega de dichas declaraciones, entiende que en este caso no hubo un perjuicio sustancial al acusado de modo que amerite la revocación de la sentencia condenatoria."

que no constituía un comentario el silencio del acusado, en verdad lo era. El incidente surgió así: un testigo que era abogado se anunció que declararía sobre algo que le había dicho el acusado. A esto el fiscal se opuso y manifestó como razón que "el acusado está aquí para decirlo, si quiere decirlo".

En nuestra opinión afirmamos que lo antes expresado no constituía un comentario del silencio del acusado. Y normalmente no lo consideramos como tal comentario. Pero en el caso de autos el tribunal y las partes consideraron tal manifestación como un comentario del silencio. Así se hizo constar y el jurado así lo tiene que haber entendido. Ahora bien, inmediatamente la corte instruyó al jurado que no lo tomaran en cuenta. Luego repitió la instrucción al trasmitirle las instrucciones finales.

En *Pueblo* v. *Díaz*, 69 D.P.R. 621 (1949) que ratificamos recientemente en *Pueblo* v. *Verdejo Meléndez,* 88 D.P.R. 207 (1963) resolvimos que mediante las instrucciones pertinentes "el error cometido al comentar el fiscal el silencio del acusado queda curado".

*No ha lugar a la reconsideración solicitada.*

—o—

EN MOCIÓN DE RECONSIDERACIÓN

San Juan, Puerto Rico, a 18 de diciembre de 1963

PER CURIAM: Se solicita por segunda vez la reconsideración de nuestro fallo en el presente caso. Para sostener su recurso el apelante apuntó, entre otros, el siguiente error:

"LOS VEREDICTOS DICTADOS CONTRA EL ACUSADO APELANTE SON NULOS E INEFICACES POR HABER VIOLADO EL FISCAL EL ARTICULO II, SECCION 11, INCISO 3 DE LA CONSTITUCION DE PUERTO RICO."

Al resolverlo expresamos lo siguiente:

"El incidente que motiva este señalamiento de error ocurrió en ocasión en que el Lic. William Luyando Charneco prestaba

su testimonio como testigo de defensa e iba a declarar respecto de lo que él había observado en su oficina y lo que allí le había dicho el acusado. El fiscal objetó a que el testigo declarara sobre ese extremo y ocurrió entonces el siguiente incidente: (T.E. págs. 1236–1237)

'Hon. Fiscal ORTIZ JUAN:

Señor juez, hay dos razones por las cuales no debe ni puede el compañero Luyando, como testigo que es, decir lo que le dijo el acusado: Una es que el acusado está aquí para decirlo, si quiere decirlo. . . .

'Lic. ANDREU RIBAS:

Un momentito. Vuestro Honor, ha cometido un error grave el fiscal. . . .'

"Ocurrido el incidente la defensa solicitó del Tribunal que decretara un 'mistrial' fundándose en que el fiscal había comentado indebidamente el *silencio del acusado*. Discutido el planteamiento, el Tribunal lo declaró sin lugar e inmediatamente procedió a instruir específicamente sobre el derecho del acusado de abstenerse de declarar, les llamó la atención para que bajo ningún concepto consideraran en sus deliberaciones el hecho de que el acusado no hubiera declarado o presentado prueba en su defensa, y recriminó duramente al fiscal por el comentario que había hecho. El Tribunal preguntó, además, a los miembros del jurado si tomarían en cuenta el comentario del fiscal. El jurado respondió, 'No señor'. (Véase T.E. págs. 1243–1247.) También les instruyó sobre ese mismo extremo en sus instrucciones generales. (Véase T.E. pág. 2692.)

"La Sec. 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico en lo pertinente dispone: 'Nadie será obligado a incriminarse mediante su propio testimonio y *el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra.*' (Énfasis nuestro.) Antes de adoptarse nuestra Constitución existían en Puerto Rico varias disposiciones estatutarias en virtud de las cuales, por vía de interpretación judicial, se le había extendido a todo acusado la misma protección y garantía.

"El Artículo 2, inciso 3, de la Carta Orgánica de 1917 (1 L.P.R.A. sec. 2, pág. 55) disponía:

'Ninguna persona será considerada responsable de un delito sin el debido procedimiento de ley; y ninguna persona

será puesta dos veces en riesgo de ser castigada por el mismo delito, *ni será obligada en ninguna causa criminal a ser testigo contra sí misma.'* (Énfasis nuestro.)

"El Artículo 7 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 7, lee como sigue:

'A nadie podrá obligarse a declarar en contra suya, en un proceso criminal; ni a ningún acusado de delito público podrá sometérsele, antes de ser sentenciado, a mayor restricción que la necesaria para que conteste a la acusación.'

"El Artículo 29, inciso 2, del mismo Código (34 L.P.R.A. sec. 59) dispone:

'Si después de oída la denuncia, el acusado alegare su inocencia, el juez procederá en la siguiente forma: . . . *Si el acusado no declarare tal circunstancia no podrá utilizarse en su contra.'* (Énfasis nuestro.)

"No creemos que la manifestación del fiscal antes transcrita en que se basa este error, constituye un comentario sobre el silencio del acusado. No se expresó directamente, ni puede inferirse de tal comentario que se hacía alusión alguna al silencio del acusado como se hizo en *Pueblo* v. *Roldán,* 27 D.P.R. 786 (1919) ; *Pueblo* v. *Estrada,* 51 D.P.R. 815 (1937); y *Pueblo* v. *Díaz,* 69 D.P.R. 621 (1949). Concluimos, por lo tanto, que no se incurrió en el referido error."

Solicitada la reconsideración, manifestamos lo siguiente:

"Se solicita la reconsideración de la sentencia que confirmó la dictada por el tribunal de instancia. Como fundamento se aduce que contrario a la determinación que hicimos en relación con un comentario del fiscal al efecto de que no constituía un comentario el silencio del acusado, en verdad lo era. El incidente surgió así: un testigo que era abogado se anunció que declararía sobre algo que le había dicho el acusado. A esto el fiscal se opuso y manifestó como razón que 'el acusado está aquí para decirlo, si quiere decirlo'.

"En nuestra opinión afirmamos que lo antes expresado no constituía un comentario del silencio del acusado. Y normalmente no lo consideramos como tal comentario. Pero en el caso de autos el tribunal y las partes consideraron tal manifestación como un comentario del silencio. Así se hizo constar y el jurado así

lo tiene que haber entendido. Ahora bien, inmediatamente la corte instruyó al jurado que no lo tomaran en cuenta. Luego repitió la instrucción al trasmitirle las instrucciones finales.

"      .      .      .      .      .      .      ."

Se insiste en esta segunda moción de reconsideración en el planteamiento de que las instrucciones no pueden curar el error cometido al comentar el silencio del acusado. Consideramos que en ciertas ocasiones una instrucción no puede curar un comentario sobre el silencio del acusado. Pero en este caso ésa no es la situación. Como expusimos en nuestra opinión original el incidente en que el apelante basó su planteamiento no constituye un comentario al silencio del acusado. El hecho de que el juez y las partes lo consideraran como tal, no lo hace un comentario al silencio del acusado. Lo que ocurrió fue que el acusado hizo ciertas manifestaciones supuestamente beneficiosas para él a una tercera persona y luego intentó traerlas ante el jurado a través de esa tercera persona. Por no ser admisiones en interés contrario, la prueba era inadmisible bajo la regla de referencia y posiblemente también bajo la regla de prueba en interés propio. El fiscal sólo trataba de sostener su objeción a esa prueba, en un incidente provocado por el acusado mismo al intentar producir prueba inadmisible. Evidentemente la manifestación del fiscal al efecto de que "el acusado está aquí para decirlo" no constituye un comentario sobre el silencio y sí una expresión, luego de oponerse a la forma en que se pretendía presentar al jurado supuestas manifestaciones del acusado a través de una tercera persona, al efecto de que era el acusado el que tenía que declarar sobre la cuestión si quería que el jurado la considerase.

*Procede, pues, declarar sin lugar la moción de reconsideración radicada con fecha 26 de julio de 1963.*