EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
MIGUEL QUIÑONES RAMOS, acusado y apelante.

*Número:* CR-68-247    *Resuelto:* 13 de abril de 1970

2

*Cancio & Cancio,* abogados del apelante; *J. F. Rodríguez Rivera, Procurador General Interino,* y *Héctor R. Orlandi Gómez, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

En 16 de enero de 1967 dictamos sentencia en el recurso C-65-138, *El Pueblo de Puerto Rico* v. *Tribunal Superior, etc.,* confirmando una resolución que había concedido un nuevo juicio al apelante Miguel Quiñones Ramos. (¹) Celebrado el proceso, el jurado le declaró culpable de una infracción al Art. 8 de la Ley de Armas, 25 L.P.R.A. sec. 418, y, por la misma

---

(¹) La mayoría del Tribunal se fundó en que se había instruido erróneamente al jurado sobre el aspecto de posesión incidental de un arma, Regla 188 (d) (5) de las de Procedimiento Criminal. Otros tres jueces concurrieron y adujeron que además la solicitud participaba de la naturaleza de un *coram nobis,* Reglas 188 (f) y 192.

prueba, el juez que presidía le declaró incurso en violación del Art. 6 de dicha ley, 25 L.P.R.A. sec. 416. Fue sentenciado a cumplir en forma concurrente las penas de 3 a 5 años de presidio y un año de cárcel. Apeló.

1. En *Pueblo* v. *Ribas*, 83 D.P.R. 386 (1961), adoptamos la norma que permite a una parte contra la cual declare un testigo en un proceso criminal obtener copia de declaraciones prestadas por dicho testigo que se relacionen con los hechos y actividades del caso sobre las cuales el testigo haya declarado en el juicio, sin necesidad de que previamente establezca durante el contrainterrogatorio las bases necesarias de impugnación de su testimonio. Específicamente condicionamos este derecho del acusado a que la solicitud se formulara "luego [del testigo] haber prestado testimonio y cuando se está en el turno de repregunta", a la pág. 392. Varios meses después, en *Pueblo* v. *Ramos Cruz*, 84 D.P.R. 563, 569 (1962), al considerar la situación de testigos de cargo que no fueron utilizados por el ministerio público y que fueron puestos a disposición de la defensa, nos negamos a extender la norma de *Ribas* en cuanto a la entrega de las declaraciones juradas en poder del fiscal, fundándonos en que la doctrina invocada se basaba "en que el acusado debe tener todas las oportunidades para impugnar la veracidad de los testigos que declaran en su contra", y, por tanto, no es hasta que el testigo presta testimonio que surge el derecho a obtener la declaración. Y en *Pueblo* v. *Díaz Díaz*, 86 D.P.R. 558 (1962), dispusimos que cuando el testigo renunciado por el fiscal es presentado por la defensa y declara, el acusado tiene derecho a que se le entregue la copia de las declaraciones prestadas, haciendo nuevamente referencia a la oportunidad de impugnar su testimonio. Pero también hicimos referencia a que el propósito del proceso criminal "es descubrir la verdad para poder hacer verdadera justicia", a la pág. 561. Limitamos, sin embargo, el descubrimiento al disponer que si el fiscal lo solicita, el juez que preside debe examinar la declaración para determinar si la misma contiene

4

información que deba ser mantenida confidencial para fines de una efectiva persecución del crimen, y en caso afirmativo, ordenará que se transcriba la declaración eliminando lo confidencial y se entregue a la defensa. *Pueblo* v. *Ramos Cruz*, supra, fue seguido estrictamente en *Pueblo* v. *Cotto Torres*, 88 D.P.R. 23, 37 (1963) y *Pueblo* v. *Martell Cajigas*, 88 D.P.R. 636, 648 (1963).

Hemos acordado reexaminar la doctrina establecida en *Pueblo* v. *Ramos Cruz*, supra, con miras a adoptar aquella norma procesal que garantice mejor un juicio justo e imparcial, sin conceder indebidas ventajas a ninguna de las partes y sin menoscabo de una presentación fiel y cabal de los hechos para la adjudicación del juzgador. ([2])

La situación que consideramos presupone que a la terminación de la presentación de la prueba por el ministerio fiscal se renuncia a determinados testigos cuyos nombres aparecen al dorso de la acusación por ser prueba de carácter acumulativo a la *ya desfilada*, y se ponen a la disposición de la defensa para que los utilice o no conforme a la conveniencia del acusado, evitando así que surja la presunción de que de haber declarado su testimonio hubiese sido adverso al Pueblo, inciso 5 del Art. 102 de la Ley de Evidencia, 32 L.P.R.A. sec. 1887. Véanse, *Pueblo* v. *Hernández Pérez*, 93 D.P.R. 182, 189–191 (1966) ; *Pueblo* v. *Flores Berty*, 92 D.P.R. 577 (1965) ; *Pueblo* v. *Pinto Medina*, 90 D.P.R. 585, 591 (1964) ; *Pueblo* v. *Orona Merced*, 89 D.P.R. 336, 344 (1963) ; *Pueblo* v. *Cotto Torres*, 88 D.P.R. 23, 32 (1963) ; *Pueblo* v. *Torres González*, 86 D.P.R. 252 (1962). Aunque incurramos en tautología es preciso destacar que los testimonios acumulativos se refieren a aquéllos que tienden a establecer elementos de prueba que ya han sido presentados por los testigos que decla-

---

([2]) Ya desde sus concurrencias en *Pueblo* v. *Díaz Díaz*, supra, a la pág. 562, y *Pueblo* v. *Cotto Torres*, supra, a la pág. 38, el Juez Asociado Señor Santana Becerra se había manifestado en sentido favorable a la entrega de las declaraciones juradas de testigos renunciados por el fiscal.

raron. En relación con estos testigos que previamente declararon, según *Ribas*, la defensa tuvo la oportunidad de obtener sus declaraciones escritas tan pronto terminó el interrogatorio directo, sin más. Empero, al hecho de que no hayan ocupado la silla testifical no debe atribuírsele una importancia desproporcionada. El propósito de poner la prueba acumulativa a disposición de la defensa es proporcionarle la oportunidad de que mediante su examen se determine si, de ofrecerse su testimonio oralmente, pueden aducirse hechos que beneficien la posición del acusado. Este propósito no puede cumplirse cabalmente al negarse el acceso a sus declaraciones escritas previas. ¿De qué otra forma puede comprobarse la fidelidad del recuerdo de los hechos que tiene el testigo? ¿O que intencionalmente no se ocultan hechos en la entrevista para luego al declarar sobre los mismos colocar al acusado en situación de precariedad extrema por el efecto devastador que puede producir un testimonio adverso presentado por el acusado mismo? A menos que se pretenda que el acusado se tome el riesgo indebido de debilitar su defensa mediante una impugnación del testimonio del testigo renunciado que se decida a utilizar por manifestaciones contrarias contenidas en las declaraciones. Esa no sería una sana norma cuando se considera el derecho del acusado a una adecuada defensa. Por otro lado, ningún perjuicio puede causarse al ministerio público, ya que de haber utilizado los testigos hubiese tenido que entregar las declaraciones a la terminación de sus testimonios, y además, ya en esta etapa de los procedimientos ha desaparecido la necesidad de protección de la secretividad del sumario fiscal. El ejercicio por el fiscal de un buen juicio en la inclusión de los testigos al dorso de la acusación y en la renuncia de sus testimonios por ser de carácter acumulativo es todo cuanto se requiere.

■ En el ejercicio de nuestra facultad inherente de supervisar los procedimientos judiciales, *Cf. Pueblo* v. *Soto Zaragoza,* 94 D.P.R. 350, 353 (1967), adoptamos como norma para

regir en los procesos que se celebren a partir del 1 de mayo de 1970 la de permitir a la defensa inspeccionar las declaraciones juradas en poder del ministerio público de aquellos testigos de cargo que son renunciados por constituir prueba de carácter acumulativo. *Pueblo* v. *Ramos Cruz*, 84 D.P.R. 563 (1962), *Pueblo* v. *Díaz Díaz*, 86 D.P.R. 558 (1962) y *Pueblo* v. *Cotto Torres*, 88 D.P.R. 23 (1963) quedan expresamente revocados en cuanto a este particular. [3]

■ Trasladándonos a los hechos del presente caso su examen revela que la negativa a la entrega de la declaración del testigo Martín Ferrer Román renunciado por el fiscal no causó al apelante un perjuicio sustancial que amerite la revocación de la sentencia. Conforme surge de la prueba el testigo Ferrer llegó al establecimiento de Salustiano Tirado *después que el apelante había sacado un arma de fuego y apuntado a éste,* por espacio de más de quince minutos según adveraron Tirado y Doris Sanabria, que a la sazón se encontraba en el cafetín. Al llegar Ferrer, Quiñones Ramos le manifestó que iba a matar a Tirado, replicándole aquél que "tú no matas a nadie" (T.E. pág. 89); Ferrer le indicó que lo matara a él, "que lo que tenía era un abuso con una persona anciana" (T.E. pág. 96); y que entonces el apelante se metió el revólver en el bolsillo y penetró a la parte trasera de la tienda. Como se apreciará ya la comisión del delito estaba consumada cuando Ferrer hizo su aparición en el lugar de los hechos, y cualquier testimonio que pudiera haber prestado no hubiese tenido el efecto de desvirtuar lo que había ocurrido antes de su llegada según relatado por los testigos mencionados.

■ 2. No se admitió el ofrecimiento de la defensa de una declaración extrajudicial jurada de la testigo fallecida Adela

---

[3] No tratándose de un aspecto de debido procedimiento de ley resulta huera cualquier consideración sobre nuestra facultad para darle efecto prospectivo a la norma procesal que ahora adoptamos.

Rosa Cajigas, que se había utilizado para sustanciar la solicitud de nuevo juicio. Se pretende justificar su admisibilidad como una declaración en contra del interés penal de la deponente fundándose en que hubiese podido exponerla a un proceso por perjurio. Baste decir que no se estableció concluyentemente que la testigo hubiese prestado otra declaración contradictoria al fiscal en la investigación del caso y que no se trata de la situación típica en que otra persona admite la responsabilidad por los hechos que se imputan al acusado. [4] Además el estado de nuestra legislación, Art. 35 (4) de la Ley de Evidencia, 32 L.P.R.A. sec. 1678 (4)—limita la admisión de declaraciones contra interés "respecto a [los] *bienes*" [5] —y jurisprudencia, *Pueblo* v. *Santana*, 76 D.P.R. 678, 683 (1954); *Pueblo* v. *Márquez*, 67 D.P.R. 326, 329 (1947); *Pueblo* v. *Camacho*, 66 D.P.R. 859, 862 (1947); *Pueblo* v. *Marchand Paz*, 53 D.P.R. 671, 677 (1938), impedía que se accediera a la solicitud de la defensa. [6]

■ 3. La inferencia de los incidentes que se relatan en el tercer error que puede haberse derivado sobre el resultado del juicio anterior no justificaba la disolución del jurado. *Piñero Agosto* v. *Tribunal Superior*, 94 D.P.R. 204 (1967). La oportuna intervención del juez y las adecuadas instruc-

---

[4] Todo cuanto se afirma en la declaración jurada que se ofreció es que "en la investigación de este caso yo declaré ante el Fiscal obligada por mi concubino pero al enterarme de que Miguel había salido culpable por portar armas me ha dado pena con esta injusticia . . . ."

[5] Véase, la Regla 512 de las Reglas de Evidencia, propuesta desde 1958.

[6] Esta regla de exclusión de las manifestaciones en contra del interés penal del declarante ha sido fuertemente criticada. Véanse, McCormick, *Law of Evidence*, § 255; Jones, *Law of Evidence*, vol. 2, § 296; Wigmore, *Evidence*, vol. 5, § 1476; Morgan, *Declarations Against Interest*, 5 Vand. L. Rev. 451 (1952); Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule*, 58 Harv. L. Rev. 1 (1944); Morgan, *Declarations Against Interest in Texas*, 10 Texas L. Rev. 399 (1932); Notas en 62 Nw. U.L. Rev. 934 (1967); 18 Syracuse L. Rev. 61 (1966), 12 De Paul L. Rev. 323 (1963), 16 Wash. & Lee L. Rev. 126 (1959) y 61 W. Va. L. Rev. 149 (1959). Véase además, 162 A.L.R. 446.

ciones sobre el particular evitaron cualquier perjuicio que concebiblemente se le pudo haber causado al apelante, especialmente si se considera que la defensa había mencionado el juicio anterior en varias ocasiones—desde el momento mismo de la selección del jurado—y que no se aludió expresamente al fallo recaído.

■ 4. La prueba de cargo es suficiente para sostener la convicción, especialmente el testimonio de los testigos Salustiano Tirado y del policía Manuel Chico, a quien el apelante le entregó voluntariamente el arma. En realidad el apelante no hace esfuerzo alguno para señalar la insuficiencia de la prueba ni las alegadas contradicciones. El apuntamiento es frívolo.

5. Convenimos en que bajo las circunstancias del caso resulta excesivo el término mínimo de tres años y que debe reducirse el mismo para propiciar los fines de la Ley de Sentencias Indeterminadas.

*Se modificará la sentencia dictada por el Tribunal Superior, Sala de Aguadilla, en 29 de junio de 1967, en el caso G-63-99 para reducir el término mínimo a un año, y así modificada se confirmarán las sentencias dictadas en dicha fecha.*

El Juez Asociado Señor Santana Becerra disintió en parte. El Juez Presidente Señor Negrón Fernández y el Juez Asociado Señor Hernández Matos no intervinieron.

—O—

Opinión disidente en parte del Juez Asociado Señor Santana Becerra

San Juan, Puerto Rico, 13 de abril de 1970

Sostuve en *Pueblo* v. *Díaz Díaz*, 86 D.P.R. 558 (1962), distinto al criterio mayoritario, que un acusado tenía derecho a que se le suministraran copias de las declaraciones juradas prestadas por testigos del Ministerio Público—que luego éste

no sentaba a declarar y ponía a disposición de la defensa—
antes de que la defensa determinara utilizarlos o no.

En ese caso hubo la siguiente expresión de mi parte en la
sentencia: (86 D.P.R. a la pág. 562)

"El Juez Asociado Sr. Santana Becerra es de opinión que
la entrega de las declaraciones juradas del sumario del fiscal, de
los testigos renunciados por éste durante el juicio, procedía no
sólo en la etapa del proceso en que este Tribunal en su opinión
la reconoce, después de haber sido utilizados como testigos del
acusado, sí que también en la etapa previa de los procedimientos
en que fueron por primera vez requeridas, antes de declarar los
testigos en el juicio, *como factor necesario para una adecuada
defensa en un proceso justo.*" (Énfasis ahora.)

Posteriormente, en *Pueblo v. Cotto Torres,* 88 D.P.R. 23
(1963), volví a expresarme así en la sentencia: (88 D.P.R. a
la pág. 38)

"El Juez Asociado señor Santana Becerra hace constar—con-
secuente con el criterio que expresó en *Pueblo v. Díaz Díaz,* 86
D.P.R. 558 (1962)—que en su opinión el acusado tenía derecho a
que se le suministraran las declaraciones juradas de los testigos
renunciados por el fiscal como prueba acumulativa, *como un
elemento de juicio en la preparación de su prueba,* y porque en
esa etapa, la razón de ser de la secretividad del sumario fiscal,
justificada o no, ya ha perdido su virtualidad y la cuestión debe
descansar en una sana discreción del tribunal juzgador que pro-
teja adecuadamente los derechos del acusado; pero a la luz
de todos los hechos y demás circunstancias presentes en el ré-
cord relacionados con la negativa a ordenar la entrega de dichas
declaraciones, entiende que en este caso no hubo un perjuicio
sustancial al acusado de modo que amerite la revocación de la
sentencia condenatoria." (Énfasis ahora.) (¹)

---

(¹) La teoría de la secretividad del sumario fiscal, edificada sobre una
ligera expresión del Art. 11 del Código de Enjuiciamiento Criminal adop-
tado en 1902, al efecto de que *"el examen"* de testigos por el promotor
fiscal se hará privadamente, teoría que hallaba fuerza en el hecho de que
bajo el sistema entonces imperante el fiscal tenía la facultad de determinar
causa probable para ordenar arrestos y también para someter al ciuda-
dano a proceso, ha perdido su virtualidad y a mi juicio no tiene ya un

El Tribunal adopta la norma, pero no puedo estar conforme con la expresión de efecto y vigencia prospectiva con que la limita.

En ésta, como en otras recientes decisiones del Tribunal, aparentemente se ha querido seguir el mecanismo que últimamente ha seguido el Tribunal Supremo de los Estados Unidos con relación a la aplicación de decisiones penales a otros casos. Sólo que aparentemente, ese mecanismo no se está entendiendo correctamente.

1. En *Eskridge* v. *Washington State Board of Prisons*, 357 U.S. 214 (1958), se determinó que la decisión de *Griffin* v. *Illinois*, 351 U.S. 12 (1956), que reconoció el derecho de un indigente a tener el récord para su apelación sin costo,

---

fundamento racional para sostenerse:—primero, desde que por la Constitución de 1952 el fiscal fue privado de su facultad de determinar causa probable para arrestos; y luego, desde que a partir de 1963 fue privado de la facultad de determinar causa probable para someter al ciudadano a un proceso; y además, dentro del espíritu de la norma de debido procedimiento sentada en el conocido caso de *Jencks* v. *United States*, 353 U.S. 657 (1957); y después de la vigencia de la actual Regla 95 de Procedimiento Criminal.

Como lo era en el enjuiciamiento español que aquí precedió al procedimiento criminal de 1902—en que una vez dictado auto de procesamiento (causa para enjuiciar) el sumario fiscal quedaba abierto al acusado—me parece que una vez el Ministerio Público acude con su investigación a un magistrado y éste determina que hay causa probable para someter al ciudadano a un proceso, todo el sumario fiscal adquiere ya el concepto de expediente público debido a la intervención judicial, y debe estar al alcance del acusado.

El sostener de ahí en adelante su secretividad pugna con los más modernos criterios procesales de un juicio justo con las cartas sobre la mesa y sin sorpresas escondidas, porque ello facilita la búsqueda de la verdad en la debida preparación del acusado para el juicio antes de que comience éste. Lo dicho cobra mayor razón de ser para mí en el caso del ciudadano indigente, que es la gran masa de ciudadanos que afrontan procesos penales, y quienes carecen de aquellos medios y mecanismos para preparar su defensa de que dispone el Ministerio Público en la investigación y acopio de prueba para el juicio.

Creo que ya ha llegado el momento de que esta teoría de secretividad en la cual se sigue refugiando el Estado deba ser reevaluada, bien por determinación judicial como problema de juicio justo e imparcial, o ya mediante estudio y criterio legislativo.

contra la negativa a suministrárselo, se aplicaba retroactivamente, a situaciones ocurridas antes de dicha decisión.

2. En *Linkletter* v. *Walker*, 381 U.S. 618 (1965), en que se consideró el efecto prospectivo o retroactivo de la decisión de *Mapp* v. *Ohio*, 367 U.S. 643 (1961), el Tribunal hace una exposición clara de la norma de derecho a seguir y los factores a considerar al decidirse si una decisión ha de ser aplicada o no a situaciones iguales coetáneas o anteriores a ella, o si sólo a situaciones iguales surgidas con posterioridad a la misma.

La exposición doctrinal del Juez Clark en *Linkletter* sobre la materia, a mi juicio no superada por expresiones posteriores del Tribunal, no ha sido repudiada.

3. En *Johnson* v. *New Jersey*, 384 U.S. 719 (1966), se sostuvo que la decisión de *Gideon* v. *Wainwright*, 372 U.S. 355 (1963), que decretó el derecho a asistencia de abogado, tenía aplicación retroactiva, o sea a procesos ocurridos antes de dicha decisión, e igualmente sostuvo la aplicación retrospectivamente de *Jackson* v. *Deno*, 378 U.S. 368 (1964).

4. *Johnson* v. *New Jersey* también dispuso que la norma de *Escobedo* v. *Illinois*, 378 U.S. 478 (1964), era aplicable sólo a procesos comenzados después de dicha decisión, 22 junio de 1964, y dio igual aplicación prospectiva a *Miranda* v. *Arizona*, 384 U.S. 436 (13 de junio de 1966).

5. En *Tehan* v. *Shott*, 382 U.S. 406 (1966), se dictaminó que la decisión de *Griffin* v. *California*, 380 U.S. 609 (1965), no se aplicaría retrospectivamente.

6. *Stovall* v. *Deno*, 388 U.S. 293 (junio 12, 1967), dispuso que las normas constitucionales sentadas ese día en *United States* v. *Wade*, 388 U.S. 218 y en *Gilbert* v. *California*, 388 U.S. 263, sobre confrontación para identificar, serían aplicables a confrontaciones surgidas con posterioridad a esa fecha.

7. *Roberts* v. *Russell,* 392 U.S. 293 (1968), dispuso la aplicación retroactiva de la norma sentada en *Bruton* v. *United States,* 391 U.S. 123 (1968).

8. La aplicación no retroactiva de la decisión de *Duncan* v. *Louisiana,* 391 U.S. 145 (1968), y de *Bloom* v. *Illinois,* 391 U.S. 194 (1968), fue dispuesta en *De Stefano* v. *Woods,* 392 U.S. 631 (1968).

9. *Berger* v. *California,* 393 U.S. 314 (1969), determinó la aplicación retroactiva de la norma establecida en *Barber* v. *Page,* 390 U.S. 719 (1968), sobre declaraciones previas de testigos.

10. *Desist* v. *United States,* 394 U.S. 244 (1969), dispuso que la norma sentada en *Katz* v. *United States,* 389 U.S. 347 (1967), se aplicaría prospectivamente a investigaciones conducidas después de dicha decisión.

11. *Jenkins* v. *Delaware,* 395 U.S. 213 (1969), estableció que la norma de *Miranda* v. *Arizona,* 384 U.S. 436 (1966), no se aplicaba a acusados cuyos nuevos juicios comenzaron después de dicha decisión de *Miranda,* pero en que los juicios originales comenzaron antes de la misma.

Si se examinan esos pronunciamientos, se verá que el Tribunal Supremo no ha actuado a capricho y por mero *fiat* al darle solo efecto prospectivo a una decisión suya, como excepción y alegándose de la norma tradicional de derecho al efecto de que el fallo judicial declara la ley como la ley ha sido. Se han expuesto las razones para la vigencia prospectiva únicamente, sobre una base de caso por caso, y a la luz de todos los hechos y circunstancias envueltos en cada situación.

En mi expresión disidente en *Pueblo* v. *Delgado Martínez,* 96 D.P.R. 720 (1968), a la pág. 725 y ss., tuve ocasión de manifestarme sobre el particular. También ha sido un factor decisivo el de si se afronta el problema en un ataque colateral del fallo o en apelación directa. Como se dice en *Johnson* v. *New Jersey,* supra, a la pág. 728, la retroactividad o no re-

troactividad de una norma no está automáticamente determinada por la disposición constitucional en que se basa el dictamen. Cada norma constitucional de procedimiento penal tiene sus propias funciones, y su propio efecto en la administración de justicia, y la manera en que estos factores se combinan debe variar inevitablemente con el dictamen dado. Así, debemos determinar la retroactividad *"en cada caso"* examinando los rasgos peculiares de la específica "regla envuelta". (²)

Con todo lo anterior, y a pesar del mecanismo recientemente utilizado por el Tribunal Supremo de los Estados Unidos, mecanismo éste que tratamos de aplicar sólo que en forma automática, y no selectiva y fundamentada como demuestran esas decisiones, dicho Tribunal no ha fijado fecha de vigencia a un decisión al emitir la misma. Emitir un fallo, que es función de interpretar y declarar la ley aplicable a una cuestión litigiosa, fijándole a tal fallo cláusula de vigencia, deja de ser función judicial para ser un acto puramente legislativo no permisible. Bajo el sistema constitucional del Estado Libre Asociado de Puerto Rico, equivale a adoptar una Regla de Procedimiento Criminal a partir de determinada fecha soslayando la intervención de la Legislatura que la Constitución exige.

Según anuncié mi posición en los casos de *Díaz* y *Cotto Torres*, la negativa a suministrar las declaraciones en la etapa aludida puede llevar a una situación de un juicio justo e imparcial o no, *dependiendo de las circunstancias de cada caso en particular*. La norma que hoy se adopta dejaría fuera y sin corrección judicial por medio de un *fiat* legislativo, del propio tribunal, los casos en que los derechos del acusado

---

(²)*Cf. Limitation of New Judge-Made Law to Prospective Effect Only. "Prospective Overruling"*, Marq. L. Rev., Vol. 52 (1967), pág. 254.
*Nota*: Al caso de *Kenney* v. *Haugh* (Iowa), 163 N.W.2d 428 (1968), en Drake L. Rev., Vol. 18, No. 1, pág. 285;
*The Control of "Sunbursts": Techniques of Prospective Overruling*, Schaefer, N. Y. U. L. Rev., Vol. 42 (1967), pág. 631.

hayan podido haberse perjudicado, a la luz de sus particulares hechos y circunstancias. Por lo anterior disiento de esa parte del fallo.

He examinado el récord en este caso, y conforme al mismo y sus circunstancias, creo que la negativa a conceder las declaraciones juradas en la etapa en que se solicitaron no creó un estado de indefensión y perjuicio al apelante que justifique una revocación de la sentencia. La propia defensa de hecho renunció a invocar tal perjuicio al expresar para el récord que de la entrevista sostenida con el testigo renunciado no surgía nada que pudiera llevar a su ánimo el utilizarlo como testigo de defensa. He llegado a esta conclusión *"más allá de duda razonable"*, conforme a la norma que exige *Chapman* v. *California*, 386 U.S. 18, pág. 24.

Al igual que en *Cotto Torres*, creo que no se cometió error revocable en las circunstancias de este caso, en que además se trataba de una prueba de cargo breve, clara, sencilla, sin discrepancias dentro de ella misma, y de un valor probatorio muy contundente.